# IN THE SUPREME COURT OF IOWA

No. 16–1333

Filed June 15, 2018

**MARLON MORMANN,**

Appellant,

vs.

**IOWA WORKFORCE DEVELOPMENT,**

Appellee.

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

Former administrative law judge requests interlocutory review of the district court's dismissal of his failure-to-hire claim. **AFFIRMED.**

Lori Bullock and Jill Zwagerman of Newkirk Zwagerman, P.L.C., Des Moines, and Nathaniel R. Boulton of Hedberg & Boulton, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and David L.D. Faith II and Jeffrey C. Peterzalek, Assistant Attorneys General, for appellee.

**APPEL, Justice.**

In this interlocutory appeal, Marlon Mormann, an applicant for the position of Deputy Workers' Compensation Commissioner at Iowa Workforce Development (IWD) calls upon us to determine whether the statutory requirement that complaints be filed with the Iowa Civil Rights Commission (ICRC) within 300 days of the discriminatory act may be tolled through application of the discovery rule or equitable estoppel. *See* Iowa Code § 216.15(13) (2015). If we determine these equitable tolling doctrines are available, Mormann asks us to find that he is entitled to avoid strict application of the 300-day filing requirement.

The district court granted IWD's motion to dismiss Mormann's failure-to-hire claim. The court assumed equitable doctrines could apply to the 300-day filing requirement in the Iowa Civil Rights Act (ICRA) but concluded Mormann could not escape the filing limitation through application of the discovery rule or equitable estoppel. The court did not dismiss a constructive discharge claim brought by Mormann related to his departure from IWD on January 5, 2015, finding this claim was filed within the 300-day filing period.

Mormann filed an application for interlocutory review, which we granted. For the reasons expressed below, we hold the equitable tolling doctrines of the discovery rule and equitable estoppel are available with respect to the 300-day filing limitation in the ICRA. We further hold, however, that Mormann is not entitled to toll the 300-day filing limitation through application of either the discovery rule or equitable estoppel. As a result, we affirm the decision of the district court.

## I. Factual and Procedural Background.

## A. Factual Background to Failure-to-Hire Claim.

1. *Introduction.*   Mormann worked for IWD from 1990 to 2015. During this period of time, he held a number of positions, including deputy workers' compensation commissioner.   He also served as an administrative law judge in the workers' compensation division of IWD. At all times relevant to this case, Mormann was an administrative law judge in the unemployment insurance division of IWD.

2. *Application for position of deputy workers' compensation commissioner.*   In January 2014, Mormann applied for an open deputy workers' compensation commissioner position.   Workers' Compensation Commissioner Christopher Godfrey chaired a hiring committee that interviewed and evaluated candidates.   On February 19, Godfrey sent an email to Teresa Wahlert, the Director of IWD.   In the email, Godfrey advised Wahlert that Erin Pals was the committee's top candidate.

Godfrey explained to Wahlert why the committee favored Pals over Mormann.   Godfrey noted Pals did not have as much experience as Mormann.   Godfrey, however, told Wahlert that Mormann was not the top candidate because his resume and cover letter were brief; because of concerns that Mormann would not have a practitioner's perspective; because his past work for the division, though prompt, was sometimes short on analysis; and because after leaving his prior position of deputy workers' compensation commissioner he had not been active in the workers' compensation community.   If Pals declined the position, however, Godfrey recommended the position be offered to Mormann.

On March 7, Godfrey sent Mormann a letter informing him that he had not been selected for the position.   Godfrey told Mormann,

I am writing to regretfully inform you that we have decided on an alternate candidate to fill the position of Deputy Workers' Compensation Commissioner. The decision was a difficult decision and as I mentioned before, you were one of the finalists for the position. You are clearly qualified for a Deputy Commissioner's position and I am certain that you would be a terrific addition to our staff. I encourage you to submit your application for future openings with the Division of Workers' Compensation, if you remain interested in our division.

3. *Deposition of Wahlert in the Godfrey matter related to failure to hire Mormann.* On September 17, Wahlert gave a deposition in an unrelated case brought by Godfrey. Wahlert was asked a series of questions regarding the failure of IWD to offer the deputy commissioner position to Mormann. Wahlert stated that she did not agree with Godfrey's recommendation that if Pals declined the job, the position should be offered to Mormann. Wahlert testified, however, that "[they] never had to have that discussion" about her disagreement with the recommendation because "it really wasn't important unless [they] got to the point where [Godfrey] wanted to offer the job [to Mormann]." Wahlert further testified, "So, I never stated what my opinions were at that time." When asked to explain the basis for her disagreement with the recommendation that the position be offered to Mormann if Pals declined, Wahlert cited

statements that [Mormann] had made to people and during his interview that he thought he was going to retire. And so I was concerned that training and time would be invested and that perhaps more of a conversation needed to be had to be sure that the investment was appropriate for the long-term.

Wahlert's September 2014 deposition was originally taken under seal. It became public, however, on March 18, 2015.

4. *Mormann's complaint with the ICRC.* On May 4, Mormann filed a complaint with the ICRC. In his complaint, Mormann stated he was born in November 1956, making him fifty-seven years old at the time of

his application for the deputy workers' compensation commissioner position. Mormann challenged the decision of IWD and Wahlert not to hire him for the position.

Iowa Code section 216.15(13) states that "a claim . . . shall not be maintained unless a complaint is filed with the commission within three hundred days after the alleged discriminatory or unfair practice occurred." Mormann recognized his complaint was filed more than 300 days after he received notice of the decision to hire another person as deputy workers' compensation commissioner. Mormann, however, noted the ICRA authorized the ICRC to establish rules, and the ICRC had adopted Iowa Administrative Code rule 161—3.3(3) pursuant to its rulemaking authority. This rule provides,

> By law the filing period described in subrule 3.3(1) and in Iowa Code subsection 216.15[(13)] is subject to waiver, estoppel, and equitable tolling. Whether the filing period shall be equitably tolled in favor of a complainant depends upon the facts and circumstances of the particular case. Equitable tolling suspends the running of the filing period during the period of time in which the grounds for equitable tolling exist.

Iowa Admin. Code r. 161—3.3(3).

Mormann argued he had no way to discover the age discrimination until after a district court "gag order" was lifted on March 18, 2015. Mormann claimed in his civil rights complaint that Wahlert intervened in the hiring decision but initially refused to explain the reason for rejecting Mormann for the position. Mormann, however, asserted Wahlert cited the fact that Mormann was too close to retirement as a basis for the decision. Wahlert did not advise Godfrey of her view on Mormann because it was not important unless it got to the point where Godfrey wanted to hire Mormann for the job. Given these facts, Mormann

claimed the true reason he was not considered did not come out until Wahlert's deposition was released on March 18.

Mormann attached exhibits to his complaint: (1) a news article dated March 18, 2015, stating that the depositions in the Godfrey matter were released; (2) a partial transcript of Wahlert's deposition; (3) a partial transcript of Governor Terry Branstad's deposition in the Godfrey matter; (4) the March 7, 2014 letter from Godfrey stating Mormann was not hired for the position of deputy commissioner but praising Mormann's qualifications and urging him to apply if other positions become available; and (5) the February 19 email from Godfrey to Wahlert explaining the search committee's recommendation of Pals over Mormann for the deputy workers' compensation commissioner position.

In his complaint, Mormann sought reinstatement, back pay, front pay, attorneys' fees, and damages for outrageous conduct. Mormann obtained a right-to-sue letter from the ICRC and filed an action in district court on March 28, 2016.

**B. District Court Proceedings.**

1. *Overview of petition.* Mormann's district court petition alleged age discrimination in connection with the failure of IWD to offer him the deputy workers' compensation commissioner position.[1] He alleged that since 1990, he had been employed as a deputy workers' compensation commissioner or as an administrative law judge. At the time he was denied the job as deputy workers' compensation commissioner, Mormann alleged he was employed as an administrative law judge in the unemployment appeals bureau of IWD. According to Mormann, however,

---

[1]Mormann also alleged constructive discharge in connection with his departure from employment at IWD on January 5, 2015. The district court did not dismiss this claim, and it is not before us in this interlocutory appeal.

he had held the position of deputy workers' compensation commissioner twice before.

Mormann alleged the position of deputy workers' compensation commissioner was given to "a younger candidate who had no prior experience in the role." He asserted Wahlert "not only influenced, but was directly involved in making hiring decisions" related to the deputy workers' compensation commissioner position.

Mormann alleged the "real reason" he was denied the position surfaced only with the public release of Wahlert's deposition on March 18, 2015. Prior to that date, according to Mormann, the deposition of Wahlert was subject to a "gag order" placed on participants in the hiring process which "Wahlert employed regarding the Deputy Workers' Compensation Commissioner position." According to Mormann, the "Defendant's actions were done with the intent to prevent [the] Plaintiff from learning the reasons why he was not chosen for the Deputy Workers' Compensation Commissioner position."

2. *IWD's motion to dismiss: Procedural issue.* IWD filed a motion to dismiss the petition. It argued Mormann's failure-to-hire claim should be dismissed. It asserted the district court lacked "subject matter jurisdiction or authority" because Mormann failed to file a complaint with the ICRC within 300 days of the discriminatory act or unfair practice. *See* Iowa Code § 216.15(13).

IWD attached the same exhibits to its motion to dismiss that Mormann had attached to his petition. According to IWD, the court "may consider [the exhibits] on [a] motion to dismiss for the threshold jurisdictional question—to aid the Court in establishing facts relevant to jurisdiction and authority." So although IWD argued an evidentiary

hearing was not necessary, it submitted exhibits to "aid the court in establishing facts."

Mormann resisted the motion to dismiss. On the procedural issue, Mormann emphasized that motions to dismiss are rarely granted and "nearly every case will survive a motion to dismiss" under notice pleading. *See Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004).

Yet, citing *Tigges v. City of Ames*, 356 N.W.2d 503, 511 (Iowa 1984), Mormann conceded "[a]s correctly stated by the defendants in this case, a court must have subject matter jurisdiction to hear a case and that an evidentiary hearing is appropriate to determine whether subject matter jurisdiction is appropriate." Mormann further stated "[w]hether the . . . statute of limitation was tolled in this case, is dependent upon the facts of this particular case."

Nonetheless, Mormann noted "fact specific or complicated questions involving the timeliness of a complaint are rarely resolved at this juncture in the proceedings." *Ritz v. Wapello Cty. Bd. of Supervisors*, 595 N.W.2d 786, 791 (Iowa 1999). He further asserted "[p]laintiff clearly alleged facts that there was no way that he could have known that he did not get the job based on an illegal reason."

3. *IWD motion to dismiss: Merits of equitable tolling.* Turning to the merits of equitable tolling, IWD stated equitable doctrines could not be employed to toll the 300-day statute of limitations, but most of its arguments focused on whether Mormann alleged facts sufficient to invoke the doctrine. IWD argued even if there was a discovery rule, Mormann was on inquiry notice when he learned that a much younger person had been hired for a position for which Mormann was clearly qualified.

According to IWD, equitable tolling arises only "when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 836 (8th Cir. 2002) (quoting *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995)). According to IWD, however, Mormann was on notice of a potential claim prior to the public release of the Wahlert deposition. IWD emphasized that in order to make a prima facie case of age discrimination under the familiar *McDonnell Douglas*[2] framework, a plaintiff must show that "(1) [he or] she was a member of the protected group; (2) [he or] she was qualified to perform the job; (3) [he or] she suffered an adverse employment action; and (4) circumstances permit an inference of [age] discrimination." *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1038 (8th Cir. 2010) (quoting *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008)). Clearly, IWD argued, Moorman was aware of the first three *McDonnell Douglas* criteria. On the last criterion, IWD argued, circumstantial evidence sufficient to draw an inference of age discrimination includes knowledge that an employer hired a younger person for the job. *See Bearden*, 529 F.3d at 832.

Thus, according to IWD, the Wahlert deposition has nothing to do with knowledge that the plaintiff should have had about a potential age discrimination claim. Further, IWD argued Wahlert's statement has no bearing whatsoever as Pals was the first choice of the hiring committee and Pals accepted the offer.

Mormann responded by asserting "the discriminatory reasons" for which he was not hired could not and would not have been known to him

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).

at the time of their occurrence. According to Mormann, situations like that presented by the late disclosure of reasons in Wahlert's deposition are why the ICRC promulgated Iowa Administrative Code rule 161—3.3(3). Mormann asserted it makes no sense to require parties to file a complaint with the ICRC until they have evidence supporting their claim.

Mormann also argued IWD deliberately hid from him the real reasons why he was not hired. According to Mormann, had the defendants been honest and told him the real reason why he was not hired, he would have known and been able to file a timely complaint with the ICRC. Mormann asserted he had no reason to believe that age discrimination was at work until he had access to the Wahlert deposition. Further, Mormann noted nothing in the letter he received from Godfrey gave him any indication the decision was made based on age. Mormann conceded in his resistance, however, that "[a]t the time [he] was passed over for the Deputy Workers' Compensation Commissioner job, he was aware that a younger worker, Erin Pals, was hired in his place."

4. *Hearing before the district court.* The district court held a brief hearing on the matter. The district court opened the hearing by stating that the court was prepared to hear IWD's motion to dismiss. IWD stressed "there is no dispute at this point that applying the face of the statute that this case must be dismissed." Mormann argued facts had been concealed from him, namely, that Wahlert did not want to invest training resources in Mormann because of his intent to retire. Mormann briefly noted although IWD suggested there were reasons other than age for its failure to hire him, "those are discovery issues." Mormann noted IWD had not "produced any documents . . . in discovery to even let [him] know about any of that."

The district court asked IWD whether the dispute should be more appropriately resolved in a summary judgment motion. IWD responded the court had an obligation to determine the facts on its jurisdictional authority and that oftentimes courts "will even hold an evidentiary hearing at the motion to dismiss level." As a result, IWD argued it would be appropriate for the court to consider factual issues even though the vehicle for presenting the issue was a motion to dismiss.

5. *District court ruling.* The district court began its ruling by stating that a motion to dismiss was before the court and that "all of the allegations of the petition are regarded as true." Quoting *Tigges*, the district court stated a court faced with questions of its subject matter jurisdiction must "take charge of the proceedings affirmatively, regardless of the vehicle used to raise the issue; utilize the most efficient methods at its disposal to determine the true fact; and decide the issue promptly." 356 N.W.2d at 510.

The district court noted the case involved a question of authority to hear a particular case and not subject matter jurisdiction. Yet, the district court determined the directions for trial courts in *Tigges* were fully applicable when a question of authority to decide a particular case was presented. Further, the district court declared

> a motion to dismiss is an acceptable procedural context in which to litigate the issue, especially where, as here, all the material facts are before the court and they are undisputed, or taken as true from the pleading of the party resisting the motion.

From a combination of its factual findings and from the allegations in Mormann's complaint, the district court found the discovery rule was not available to save Mormann's claim. The district court reasoned the scope of equitable tolling was similar to that of the traditional discovery

rule applied by Iowa courts generally under statutes of limitations. *See Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 736 (Iowa 2008). The district court held Mormann knew as of the March 7, 2014 letter that the deputy workers' compensation commissioner position had been awarded to a younger candidate with no experience in that role. At that time, according to the district court, Mormann was on inquiry notice under our caselaw. In addition, the district court concluded Mormann did not show reasonable diligence in discovering his claim. According to the district court, Mormann could have interviewed Godfrey and others and could have learned the information necessary to provide the basis for filing a claim with the ICRC within the 300-day filing limitation.

On the question of equitable estoppel, the district court rejected Mormann's claim. The court noted if a failure to confess discriminatory motive were sufficient to give rise to an equitable estoppel claim, the 300-day limitation would be meaningless. In addition, the court noted the reservations expressed by Wahlert were not material because Pals accepted the job. Further, the court characterized Wahlert's statements about Mormann's potential retirement as, at most, weak evidence of discriminatory animus. To the extent Wahlert's comments revealed discriminatory animus, the court reasoned, the animus never came into play in the hiring process. The district court declared "the premise of the argument—that Wahlert admitted that Mormann wasn't hired because of his age—is *unsupported by the evidence*." (Emphasis added.)

Having rejected equitable tolling and equitable estoppel, the district court dismissed Mormann's failure-to-hire claim for not complying with the 300-day filing limitation in Iowa Code section 216.15(13).

6. *Posttrial motions.*  Mormann filed a motion to reconsider and enlarge the findings of the district court under Iowa Rule of Civil Procedure 1.904(2).  Although the motion was filed outside the fifteen-day deadline, Mormann argued under rule 1.1007, the district court had discretion to grant up to thirty days to file such a motion.  Mormann attached two affidavits, one from himself and the other from Godfrey, to support his motion.

In favor of reconsideration, Mormann argued the court's ruling on the motion to dismiss without an opportunity for discovery was premature under *Tigges*, 356 N.W.2d at 511.  According to Mormann, "The court would be well-served by allowing the parties to complete the discovery process."  Mormann further argued newly submitted affidavits demonstrated the district court erred in dismissing the complaint.

IWD responded the motion to enlarge was untimely.  IWD noted the motion was originally filed on August 8, withdrawn and refiled on August 11.  The filing was thus more than thirty days after the district court's July 7 ruling and was untimely under any theory of timeliness.  Even so, IWD characterized the motion as a rehash of prior arguments.

The district court denied the motion as untimely.  It further noted the purpose of a rule 1.904 motion is not to present newly discovered evidence.  Finally, the court stated nothing in the motion would change its initial ruling in any event.

7. *Interlocutory appeal.*  Mormann sought an interlocutory appeal, which we granted.  During the appeal process, Mormann sought to include the affidavits submitted in his rule 1.904(2) motion in the appendix.  IWD filed a motion to strike.  We granted the motion to strike, noting the interlocutory appeal had been filed on August 8 and the affidavits were not part of the record at that time.

On appeal, Mormann argues the standard of review in this matter is the standard used for a motion to dismiss. As a result, Mormann maintains, we must accept as true the well-pleaded factual allegations in the complaint. *See Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014).

On the merits, Mormann argues equitable tolling is available under the ICRA. Mormann recognizes a party is placed on notice when the party gains sufficient knowledge of facts that would put a reasonable person on notice of the existence of a problem or potential problem. *See Buechel*, 745 N.W.2d at 736. Yet, Mormann claims he did not learn of the problem or potential problem until the attorney general's office released Wahlert's deposition containing the reference to Mormann's approaching retirement. Mormann asserts the district court's statements that Mormann could have uncovered the discriminatory animus had he exercised due diligence were without any factual support.

With respect to equitable estoppel, Mormann cites *Tigges* for the proposition a motion to dismiss should be denied when "the evidence is not substantial at this point sufficient to support a finding" and that "the matter might be addressed further after the parties had concluded discovery." 356 N.W.2d at 510. In any event, Mormann argues it is "possible to conceive that IWD intended for [him] to rely on the statements in his letter and what he was told as the reason for the decision." Further, Mormann cites the district court's statement that Wahlert's statement was only "some evidence" of age discrimination. According to Mormann, the fact there was some evidence of age discrimination is exactly why the district court erred in granting the motion to dismiss. The district court, according to Mormann, "acknowledge[d] that the evidence is incomplete." Further, Mormann

argues that "[t]his premature dismissal violates his right to a trial on the merits and at the very least the right to develop the factual record in order for the district court to make an informed decision on this issue."

IWD responds by claiming the standard of review in this case is not that associated with a motion to dismiss. While IWD agrees with Mormann that motions to dismiss for failure to state a claim ordinarily limit consideration to the well-pleaded facts, which are taken as true, that standard does not apply to a review-of-dismissal ruling premised on jurisdictional issues. Instead, IWD argues in the context of a jurisdictional challenge, the trial court's findings of fact have the effect of a jury verdict.

On the merits, IWD argues the ICRC did not have the power to create an equitable exception to the jurisdictional limitation in Iowa Code section 216.15(13). IWD cites the language of the statute, which provides that "a claim under this chapter shall not be maintained unless a complaint is filed with the commission within three hundred days after the alleged discriminatory act or unfair practice occurred." Iowa Code § 216.15(13). IWD argues under the unambiguous language of the statute, there is no equitable exception to the filing requirement.

IWD further argues Mormann had all the information necessary to place him on constructive notice of a potential claim. Under the generally applicable version of the discovery rule in Iowa and in relevant federal cases, a plaintiff is on inquiry notice based upon "sufficient knowledge of facts that would put that person on notice of the existence of a problem or potential problem." *Buechel,* 745 N.W.2d at 736; *see Dring,* 58 F.3d at 1328; *Chakonas v. City of Chicago,* 42 F.3d 1132, 1135 (7th Cir. 1994). Here, at the time of his failure to get the deputy commissioner's position, IWD asserts, Mormann had all the information

necessary to establish a prima facie case of age discrimination and was thus on sufficient inquiry notice to prevent the discovery rule from being used as a tool to toll the running of the 300-day filing limitation in Iowa Code section 216.15(13).

IWD further argues Wahlert's deposition demonstrates that she did not engage in age discrimination. Citing two federal circuit court cases, IWD asserts inquiry by Wahlert into Mormann's retirement plans is not evidence of age discrimination. *See Cox v. Dubuque Bank & Tr. Co.*, 163 F.3d 492, 497 (8th Cir. 1998); *Woythal v. Tax-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997). In any event, IWD maintains Wahlert's deposition proves that Mormann was not hired because another candidate was selected and not because of age. The "discovery" of Wahlert's deposition thus did not provide vital information to Mormann that served as a basis for tolling the running of the statutory filing period.

Turning to equitable estoppel, IWD notes every sentence of the rejection letter sent to Mormann on March 7, 2014 is accurate. Further, IWD argues the failure to include a statement in the letter that "we refuse to hire you because of age" cannot toll the statute of limitations because such an approach to equitable estoppel would, as the district court held, obliterate the 300-day filing requirement. IWD further asserts Mormann failed to show reasonable reliance on any alleged misrepresentation.

## II. Issues Related to Standard of Review.

At the outset, we address procedural questions lurking in this case related to the proper standard of review in this appeal. In the district court, IWD filed what it characterized as a motion to dismiss. Ordinarily on motions to dismiss, the questions are legal and all well-pleaded facts are taken to be true in deciding the issue. *See Sanchez v. State*, 692 N.W.2d 812, 814 (Iowa 2005).

In its order, the district court declared that for the purposes of the ruling, all of the allegations in the petition were regarded as true. Yet, the district court, quoting *Tigges*, recognized when a preliminary challenge to its authority to hear a particular case is raised, the court should "utilize the most efficient methods at its disposal to determine the true fact; and decide the issue promptly." 356 N.W.2d at 510. Yet, the district court stated a motion to dismiss is an acceptable procedural context to litigate the authority issue when, as here, all the material facts are before the court and they are undisputed.

However, the district court did not always stick to undisputed facts in its ruling. The district court included observations about the evidence. For instance, the district court characterized the premise of Mormann's argument that Wahlert admitted that Mormann was not hired because of age as "unsupported by the evidence," an observation more appropriate in a trial setting. Further, the court declared Wahlert's deposition testimony cannot be reasonably considered as anything more than "some evidence, albeit weak evidence, of age discrimination." But weighing the strength of evidence is not a feature ordinarily associated with ruling on a motion to dismiss.

It was not completely clear at the district court precisely what the ground rules were for determination of the preliminary question of authority to hear the case. While IWD believed the matter could be decided based on undisputed facts, IWD submitted exhibits attached to the pleadings. And while Mormann argued the appropriate standard was the one ordinarily applied to motions to dismiss generally, Mormann further stated "an evidentiary hearing is appropriate" to decide a threshold question like that presented in this case. Although not expressly stated, the implication of Mormann's statement, in context, is

that the district court should decline the motion to dismiss because of factual issues and conduct further proceedings where the parties would have an opportunity to submit evidence.

There are three alternative approaches to reviewing this matter. We could treat the hearing below as if it were simply a motion to dismiss on the pleadings. In that event, all the well-pleaded allegations in the petition would be deemed as true, and the motion to dismiss would be granted only if there were no conceivable state of facts under which the nonmoving party would be entitled to relief. *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 639 (Iowa 1990); *Golden v. O'Neill*, 366 N.W.2d 178, 179 (Iowa 1985). Although both parties presented exhibits, the plaintiff's exhibits were attached to the petition and are thus regarded as part of the pleadings. *See Woods v. Schmitt*, 439 N.W.2d 855, 860 (Iowa 1989), *abrogated on other grounds by Christy v. Miulli*, 692 N.W.2d 694, 701 (Iowa 2005).

A second option is to treat the proceedings below under the standards for a summary judgment motion. Where additional matters are considered by the district court outside the pleadings, we may treat a motion to dismiss as a motion for summary judgment. *See Tigges*, 356 N.W.2d at 510 (holding "form must give way to substance," and a motion to dismiss may be treated as a motion for summary judgment when the motion relies on facts outside of the pleadings); *see also George v. D.W. Zinser Co.*, 762 N.W.2d 865, 867 (Iowa 2009) (noting the district court treated a motion to dismiss as a motion for summary judgment "because it relied on matters outside the pleadings"). As the moving party, IWD bears the burden of showing there is no genuine issue of material fact. *Cannon v. Bodensteiner Implement Co.*, 903 N.W.2d 322, 327 (Iowa 2017); *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015). The burden

remains on the moving party regardless of who has the burden of proof at trial. *In re Eickman's Estate*, 291 N.W.2d 308, 313 (Iowa 1980).

Finally, we could treat the lower court proceedings as a trial on the merits on the issue of whether the court has authority to hear the case. If so, we would review the trial court ruling for errors at law. *Tigges*, 356 N.W.2d at 512. Factual issues would be reviewed for substantial evidence. *Id.*

For the reasons expressed below, we conclude the district court properly dismissed Mormann's claim that the discovery rule tolls the filing limitation under any standard that might be applied to review the district court's ruling. Under the facts as pled by Mormann, including the exhibits to the petition and supplemented with a key concession made before the district court, we conclude Mormann was not entitled to toll the 300-day filing limitation in Iowa Code section 216.15(13) under the discovery rule as a matter of law. We come to the same conclusion with respect to the equitable estoppel theory based on the failure of IWD to disclose what Mormann claims is the true reason for his dismissal—age discrimination.

In the future, however, we encourage district courts to actively manage the disposition of preliminary questions regarding subject matter jurisdiction and authority in particular cases. Although a motion to dismiss is clearly the appropriate vehicle to raise the issue, the district court should determine based upon the framing of the issues and input from the parties whether preliminary issues of subject matter or authority is to be heard solely on the pleadings under the standards of a motion to dismiss, whether factual materials outside the pleadings will be considered under the standards of a motion for summary judgment, or whether the hearing will be a trial-type hearing on the merits of the

preliminary issue with an appropriate opportunity afforded to the parties to conduct discovery on the limited preliminary issues. *See Tigges*, 356 N.W.2d at 511.

### III. Discussion.

### A. Availability of Equitable Tolling Doctrines Under the ICRA.

We first address a threshold question, namely whether the doctrines of equitable tolling apply under the provision of the ICRA requiring a claimant to file a complaint with the ICRC within 300 days of when the "alleged discriminatory or unfair practice" occurred. Iowa Code § 216.15(13). We come to the firm conclusion that equitable tolling doctrines are available for a number of reasons.

First, equitable exceptions to limitations statutes are common in Iowa. In the negligence case of *Chrischilles v. Griswold*, we adopted a discovery rule under the generally applicable statute of limitations that when the plaintiff knows or should have known facts that put the plaintiff on inquiry notice that a claim may be present. 260 Iowa 453, 463, 150 N.W.2d 94, 100 (Iowa 1967), *superseded by statute on other grounds*, 1975 Iowa Acts ch. 239, § 26 (codified at Iowa § 614.1(9) (1977)), *as recognized in Langner v. Simpson*, 533 N.W.2d 511, 516–17 (Iowa 1995). Since then, we have applied the discovery rule—an equitable tolling doctrine—in a wide variety of settings, including cases involving legal malpractice, *Trobaugh v. Sondag*, 668 N.W.2d 577, 583 (Iowa 2003); fraud, *Hallett Construction Co. v. Meister*, 713 N.W.2d 225, 231 (Iowa 2006); products liability, *Franzen v. Deere & Co.*, 334 N.W.2d 730, 732 (Iowa 1983); and express and implied warranties, *Brown v. Ellison*, 304 N.W.2d 197, 201 (Iowa 1981), *disapproved of on other grounds by Franzen*, 334 N.W.2d at 732. We have also applied a

discovery rule on claims brought under the Iowa Tort Claims Act. *Vachon v. State*, 514 N.W.2d 442, 445 (Iowa 1994).

The application of the discovery rule in these cases is based upon the common sense notion that a potential claim should not be barred when the failure to bring a timely action arises from the plaintiff's lack of knowledge about key facts that are unknown to the plaintiff and cannot reasonably be discovered by the plaintiff even in the exercise of due diligence. We have stressed "the common-law discovery rule can . . . provide an exception to the statute of limitations." *Borchard v. Anderson*, 542 N.W.2d 247, 250 (Iowa 1996). We apply the discovery rule when it would be unfair to charge "a plaintiff with knowledge of facts which are 'unknown and inherently unknowable.' " *LeBeau v. Dimig*, 446 N.W.2d 800, 802 (Iowa 1989) (quoting *Urie v. Thompson*, 337 U.S. 163, 169, 69 S. Ct. 1018, 1024 (1949)). Applying the discovery rule to claims under the ICRA would be consistent with Iowa caselaw and its underlying rationale.

As early as 1875, we recognized equitable estoppel as providing a vehicle to toll a statute of limitations. *Dist. Twp. of Boomer v. French*, 40 Iowa 601, 603 (1875), *abrogated on other grounds by Christy*, 692 N.W.2d at 701–02; *see L & W Constr. Co. v. Kinser*, 251 Iowa 56, 65, 99 N.W.2d 276, 282 (1959); *Holman v. Omaha & C. B. Ry. & Bridge Co.*, 117 Iowa 268, 272–73, 90 N.W. 833, 834 (1902). As noted in *Christy*, the doctrine developed "to prevent a party from benefiting from 'the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations.' " 692 N.W.2d at 702 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983)). The doctrine of equitable estoppel is not a stranger to our law.

Second, the remedial purposes of the ICRA are best served by doctrines of equitable tolling. As noted by the United States Court of Appeals for the Third Circuit in the context of the Federal Civil Rights Act, equitable tolling doctrines are consistent with the "goal of interpreting humanitarian legislation in a humane and commonsensical manner so as to prevent unnecessarily harsh results in particular cases." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018); *see Hart v. J.T. Baker Chem. Co.*, 598 F.2d 829, 831 (3d Cir. 1979). A few years later, in *Zipes v. Trans World Airlines, Inc.*, the United States Supreme Court held limitations in Title VII of the Federal Civil Rights Act were not jurisdictional and were subject to "waiver, estoppel, and equitable tolling." 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982). According to the *Zipes* Court, the application of these equitable doctrines would "honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement." *Id.* at 398, 102 S. Ct. at 1135.

In the past decades, there has been a long parade of federal courts marching to *Zipes* and applying equitable tolling doctrines in a wide variety of factual settings under civil rights laws. *See, e.g., Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003); *Dorsey*, 278 F.3d at 836; *Oshiver*, 38 F.3d at 1390, 1392; *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990); *Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559, 1561–62 (11th Cir. 1987); *Wilkerson v. Siegfried Ins. Agency*, 683 F.2d 344, 348 (10th Cir. 1982); *Wright v. Tennessee*, 628 F.2d 949, 952–53 (6th Cir. 1980) (en banc); *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975). Many cases involve application of equitable tolling in the context of the filing of timely

charges under the Federal Age Discrimination in Employment Act (ADEA). *See, e.g., Cada,* 920 F.2d at 451–53; *Ott v. Midland-Ross Corp.,* 600 F.2d 24, 30 (6th Cir. 1979); *Fulton v. NCR Corp.,* 472 F. Supp. 377, 384 (W.D. Va. 1979).

The ICRA, of course, is not the same as Title VII or the ADEA.[3] There is no requirement that we follow federal precedent, either because we find the logic and reasoning unpersuasive or because of differences between the Iowa and federal statutes in language or structure. *See* Sandra F. Sperino, *Revitalizing State Employment Discrimination Law,* 20 Geo. Mason L. Rev. 545, 583–84 (2013). Yet, we find the reasoning of the federal precedent on the issue of equitable tolling persuasive and consistent with our general approach to statutes of limitations.

As to the discovery rule, we agree with the notion that the statute of limitations in civil rights laws should not be so strictly applied as to cut off claims which could not have been discovered in an exercise of reasonable diligence. As noted by Judge Wisdom in a seminal Fifth Circuit case over forty years ago that adopted equitable tolling in a Title VII case, "Secret preferences in hiring and even more subtle means of illegal discrimination, because of their very nature, are unlikely to be readily apparent to the individual discriminated against." *See Reeb,* 516 F.2d at 931.

---

[3]The language of the filing limitations in the Iowa and federal statutes is quite similar. Under the Federal Civil Rights Act, administrative complaints must be filed within the applicable time period measured from the time "the alleged unlawful employment practice occurred . . . ." 42 U.S.C.A. § 2000e-5(e)(1) (Westlaw through Pub. L. No. 115-173). Under the ADEA, administrative complaints must be filed within the applicable time period measured from the number of days "after the alleged unlawful practice occurred" or, in certain cases, the number of days "after receipt by the individual of notice of termination of proceedings under State law." 29 U.S.C.A. § 626(d)(1) (Westlaw through Pub. L. No. 115-173). Under the ICRA, the administrative complaint must be filed within 300 days "after the alleged discriminatory or unfair practice occurred." Iowa Code § 216.15(13).

With respect to equitable estoppel, we endorse the classic statement of Justice Black that no one

> may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.

*Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232–33, 79 S. Ct. 760, 762 (1959) (footnote omitted).

Further, if anything, the logic and reasoning in the caselaw is reinforced by language in the ICRA, where the legislature has directed that the Act "shall be construed broadly to effectuate its purposes." Iowa Code § 216.18(1) (2015); *accord Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 608 (Iowa 2017) (Appel, J., concurring). Other state courts have found equitable tolling doctrines applicable under state civil rights acts in part because of the similar legislative direction to the courts to ensure accomplishment of the beneficial purposes of the enactments. *See, e.g., McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1037–39 (Cal. 2008); *Williams v. Comm'n on Human Rights & Opportunities*, 777 A.2d 645, 658 (Conn. 2001); *Copeland v. Desert Inn Hotel*, 673 P.2d 490, 492 (Nev. 1983); *Indep. Fire Co. No. 1 v. W. Va. Human Rights Comm'n*, 376 S.E.2d 612, 615–16 (W. Va. 1988).

It is also important to remember that civil rights complaints are often filed by laypersons. Indeed, providing an avenue for relief by unrepresented persons is one of the rationales for establishing an administrative structure to process civil rights complaints. *Cf.* Marjorie A. Silver, *Evening the Odds: The Case for Attorneys' Fee Awards for Administrative Resolution of Title VI and Title VII Disputes*, 67 N.C. L. Rev. 379, 386 (1989) (citing a House Report noting the effective enforcement

of federal civil rights law is largely dependent on private citizens bringing claims, and the vast majority cannot afford legal counsel and thus are unable to effectively present their cases to the courts, in the context of the purpose of an award of attorneys' fees for successful claimants). Strict and highly technical enforcement of filing limitations is inconsistent with the statutory purpose of providing a remedial avenue for unrepresented claimants. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 262 n.16, 101 S. Ct. 498, 506 n.16 (1980) ("[T]he limitations periods should not commence to run so soon that it becomes difficult for a layman to invoke the protection of the civil rights statutes."); *Dartt v. Shell Oil Co.*, 539 F.2d 1256, 1260–61 (10th Cir. 1976) (asserting highly technical enforcement not appropriate as laypeople typically enforce ADEA statutory rights); *Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752, 754 (2d Cir. 1976) (noting enforcement mechanisms in Title VII usually triggered by laypeople); *Smith v. Josten's Am. Yearbook Co.*, 78 F.R.D. 154, 161 (D. Kan. 1978) (emphasizing Title VII "statutory scheme contemplates achievement of its goals through the largely informal efforts of laymen").

Third, this case does not involve an exceptional statute where the underlying policy rationale strongly cuts against the application of equitable tolling. For example, equitable tolling has been held to have no application to a statute of repose, which is designed to establish a clear end date for claims. *See Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1391 (7th Cir. 1990); *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040–41 (D.C. Cir. 1986). Courts have held that equitable tolling principles do not apply to claims brought under the UCC, where a fundamental purpose of the statute is to establish clear rules for rapid commercial transactions. *See Husker News Co. v. Mahaska State Bank*,

460 N.W.2d 476, 479 (Iowa 1990); *see also Peters v. Riggs Nat'l Bank, N.A.*, 942 A.2d 1163, 1171 (D.C. 2008); *Estate of Hollywood v. First Nat'l Bank of Palmerton*, 859 A.2d 472, 473 (Pa. Super. Ct. 2004); *Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc.*, 640 S.E.2d 102, 112 (W. Va. 2006). There might be a question as to whether equitable doctrines apply to questions of subject matter jurisdiction.[4] *See Hardin*, 797 F.2d at 1040–41. Although there are thus occasions where the policy underpinnings of a specific statute might weigh against equitable tolling doctrines, we do not have similar policy underpinnings under the ICRA. *See generally Cada*, 920 F.2d at 451 (stating neither equitable estoppel nor equitable tolling applies to statutes of repose and to jurisdictional statute of limitations).

Fourth, the ICRC long ago promulgated a rule under the legislature's grant of rulemaking authority in Iowa Code section 216.5(1) that embraced equitable tolling. According to the Administrative Code, the rule was promulgated in 1993 and ultimately delayed until the adjournment of the 1994 session of the general assembly. Iowa Admin. Code r. 161—3.3(3) & n.1–2 (including a final page listing amendments to the chapter, where a footnote states the effective date of rule 3.3(3)). The legislature, however, took no action to override the rule, which has remained on the books for more than twenty years. During those years, the legislature amended the ICRA several times without overturning the rule. *See* 2009 Iowa Acts ch. 178, §§ 25–26; 2009 Iowa Acts ch. 96, § 3; 2008 Iowa Acts ch. 1028, § 1; 2007 Iowa Acts ch. 110, § 1; 2005 Iowa

---

[4]Questions relating to filing limitations in civil rights acts do not raise questions of subject matter jurisdiction but only authority to act. *See Zipes*, 455 U.S. at 398, 102 S. Ct. at 1135; *Stafford v. Muscogee Cty. Bd. of Educ.*, 688 F.2d 1383, 1387–89 (11th Cir. 1982); *Coke v. Gen. Adjustment Bureau, Inc.*, 640 F.2d 584, 594–95 (5th Cir. 1981) (en banc); *Hart*, 598 F.2d at 831; *Christo v. Edward G. Boyle Ins. Agency*, 525 N.E.2d 643, 645 (Mass. 1988); *Copeland*, 673 P.2d at 492; *Indep. Fire Co.*, 376 S.E.2d at 616.

Acts ch. 23, §§ 1–3; 1998 Iowa Acts ch. 1202, § 36; 1995 Iowa Acts ch. 129, §§ 8–11. Although hardly necessary in light of the overwhelming consensus on the applicability of equitable tolling to civil rights statutes, legislative acquiescence to the agency rule is yet another factor suggesting that equitable exceptions are available to the filing requirements under the Act. *City of Sioux City v. Iowa Dep't of Revenue & Fin.*, 666 N.W.2d 587, 592 (Iowa 2003) ("The fact that this administrative rule has been in effect for eleven years strongly cautions against finding the rule invalid."); *City of Marion v. Iowa Dep't of Revenue & Fin.*, 643 N.W.2d 205, 208 (Iowa 2002) ("We have recognized that if the meaning of the statute that is subject to administrative implementation is subject to doubt and has been made the object of a rule of long-standing, we should give weight to the administrative interpretation."); *accord Smith v. City of Jackson*, 544 U.S. 228, 239, 125 S. Ct. 1536, 1544 (2005) ("Finally, we note that both the Department of Labor, which initially drafted the legislation, and the [Equal Employment Opportunity Commission (EEOC)], which is the agency charged by Congress with responsibility for implementing the statute . . . have consistently interpreted the ADEA to authorize relief on a disparate-impact theory."); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846, 106 S. Ct. 3245, 3254 (1986) ("It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75, 94 S. Ct. 1757, 1762 (1974)).

### B. Overview of Equitable Tolling Doctrines.

1. *Introduction.* We now turn to consider the contours of equitable tolling. Equitable tolling generally involves two doctrines, the discovery rule and equitable estoppel. These equitable doctrines are nuanced, fact specific, and often overlapping to some extent. But the discovery rule and equitable estoppel doctrines generally tend to emphasize different facts. The discovery rule generally focuses on the claimant. In considering whether to invoke the discovery rule, courts ask the proverbial question "what did he or she know and when did he or she know it?" On the other hand, equitable estoppel often focuses on the conduct of the defendant. An important feature of many equitable estoppel cases is whether the defendant engaged in conduct that it knew or should have known would reasonably deter the claimant from filing a timely civil rights claim. In order to invoke either theory of equitable tolling, the asserting party must show reasonable diligence in enforcing the claim. *See, e.g., Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007); *Zerilli-Edelglass*, 333 F.3d at 80; *Richards v. CH2M Hill, Inc.*, 29 P.3d 175, 184 (Cal. 2001); *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 311 (Tex. 2010). There is also general agreement in the caselaw that the burden of proof of showing equitable tolling is on the party asserting it. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013); *Slusser v. Vantage Builders, Inc.*, 306 P.3d 524, 531 (N.M. Ct. App. 2013); *In re Bonds*, 196 P.3d 672, 677 (Wash. 2008) (en banc).

2. *Overview of discovery rule.* If there is broad general consensus that under the discovery rule the focus is on what the plaintiff knew or

should have known in the exercise of reasonable diligence, there is disagreement on precisely what the plaintiff is required to know.

For example, the Massachusetts Supreme Judicial Court and the New Jersey Supreme Court have taken the position that under state civil rights laws, a claimant must have knowledge of *a claim* in order for the limitations provisions of civil rights law to run. *See Wheatley v. Am. Tel. & Tel. Co.*, 636 N.E.2d 265, 266 n.4, 268 (Mass. 1994) (filing requirement that claim be brought within six months of the alleged discriminatory act did not run until plaintiff knew or should have known that a person outside a protected class was hired for position); *Henry v. N.J. Dep't of Human Servs.*, 9 A.3d 882, 894 (N.J. 2010) (holding limitations under New Jersey civil rights law runs only when claimant learns or in the exercise of reasonable diligence should have learned that less qualified Caucasian nurses were hired for the positions).

A number of federal cases also embrace the notion that the discovery rule may excuse a late-filed claim when the claimant did not know, and in the exercise of reasonable diligence had no reason to know, that the employer filled the position from which the claimant was fired or not hired with, for example, a younger person. *See Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 396–97 (7th Cir 2000) (finding once plaintiff learned that employer hired white candidate, the time period for filing a complaint began to run); *see also Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985) ("The time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights."); *Stoller v. Marsh*, 682 F.2d 971, 974 (D.C. Cir. 1982) (noting under Title VII, limits

for filing may be tolled if employee did not know or have reason to know that an employment decision was discriminatory in nature).

Other federal civil rights discovery rule cases, however, narrowly focus not on knowledge of a claim but on the occurrence of an adverse action or unfair practice or an injury. *See, e.g., Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011); *Coons v. Mineta*, 410 F.3d 1036, 1040–41 (8th Cir. 2005); *Chapman v. Homco, Inc.*, 886 F.2d 756, 758 (5th Cir. 1989). Under this narrower approach, the discovery rule might be available in a failure-to-hire case in which the plaintiff does not know, and would not know in the exercise of reasonable diligence, whether the employer had in fact filled the applicable job. *See Almond*, 665 F.3d at 1177; *Coons*, 410 F.3d at 1041; *Chapman*, 886 F.2d at 758.

The distinction between the broad and narrow approach to the discovery rule can be quite consequential. Under the narrower view, in a termination case the injury will be immediately known to the potential plaintiff and the time period for filing will start to run. Yet, the employee might not suspect unlawful discrimination until many months later when he or she learns, in the exercise of reasonable diligence, that, for instance, a much younger employee had been hired for the same position. Under the narrow view, the running of the filing limitation is not tolled because the act of termination was immediately known, but under the broader view, the filing limitation may well be tolled until the claimant discovers the hiring of the much younger employee.

3. *Overview of equitable estoppel.* We now turn to the question of the scope of a different branch of equitable tolling: equitable estoppel. In many equitable estoppel cases, the focus is not so much on what the claimant knew or should have known, but rather upon the misconduct of

the defendant. Generally, equitable estoppel may toll the running of the filing period in a civil rights case when the defendant knows or should have known that its misconduct will reasonably cause the claimant to delay the filing of a timely civil rights claim. *See Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1368 (D.C. Cir. 1998); *Dring*, 58 F.3d at 1329. Equitable estoppel embraces the fundamental rule of equity that a party should not be able to profit from its own wrongdoing. *See Oshiver*, 38 F.3d at 1388; *Reeb*, 516 F.2d at 930.

A seminal equitable estoppel case is *Reeb*, 516 F.2d 924. In *Reeb,* the plaintiff was told that her position with the defendant was being eliminated due to lack of funds. *Id.* at 930. At the time, a charge under the applicable provision of Title VII had a ninety-day filing limitation. *Id.* at 925. The plaintiff alleged she learned only after the ninety-day filing period had expired that the employer hired an allegedly less qualified male replacement for the position. *Id.* at 926. Upon discovering the hiring of the less qualified male employee, the plaintiff promptly filed a claim with the EEOC. *Id.*

The district court dismissed the case for want of jurisdiction. *Id.* On appeal, the United States Court of Appeals for the Fifth Circuit reversed. *Id.* at 931. After concluding that the filing limitations were not jurisdictional, the *Reeb* court remanded the case to the district court for a factual determination of whether Reeb was entitled to assert equitable estoppel. *Id.* at 929–31. According to the *Reeb* court,

> employers that discriminate undoubtedly often attempt to cloak their policies with a semblance of rationality, and may seek to convey to the victim of their policies an air of neutrality or even sympathy. These tendencies may even extend to the giving of misleading or false information to the victim, as is alleged in the present case.

*Id.* at 931.

Another illustrative case is *Meyer v. Riegel Products Corp.*, 720 F.2d 303 (3d Cir. 1983). In *Meyer,* a sixty-one-year-old employee named Meyer was terminated from employment. *Id.* at 304–05. On November 11, 1977, when Meyer's supervisor advised Meyer that he was being terminated, the supervisor commented that Meyer was getting "a real screwing." *Id.* at 305. Several weeks after Meyer's last day of employment on November 25, Meyer wrote the director of personnel at Reigel Products asking, among other things, why he had been dismissed. *Id.* On January 13, 1978, the director of personnel responded, stating that Meyer had been dismissed "when the Engineering Department was reorganized due to the acquisition of Riegel Products Corporation by the James River Corporation." *Id.*

After his termination, Meyer and an attorney discussed pension issues and whether Meyer might have an age discrimination claim. *Id.* The attorney advised Meyer that based upon the information available to him, it was doubtful that Meyer could make out a prima facie case of age discrimination. *Id.*

On May 1, 1978, however, Meyer learned that Riegel Products had in fact hired a twenty-eight-year-old engineer to perform many of the tasks that Meyer had performed at the company. *Id.* Ultimately, Meyer filed a charge letter with the United States Department of Labor which was received on September 26, 1978, or 319 days after Meyer was informed of his termination on November 11, 1977. *Id.* at 305–06. The question before the district court was whether equitable tolling could be applied to save the claim from operation of the 300-day filing limitation. *Id.* at 306. The district court concluded equitable tolling was not available as a matter of law because "Mr. Meyer's own statements . . . consistently [showed] that he felt he had been the subject of age

discrimination . . . from the day he was told that he was to be terminated." *Id.* (alterations in original).

The Third Circuit reversed. *Id.* at 309. According to the Third Circuit, Meyer alleged that he had been deceived by the employer into delaying the filing of the claim. *Id.* The fact that Meyer consulted a lawyer did not defeat his equitable estoppel claim because "where a defendant misleads a plaintiff he may also mislead plaintiff's lawyer." *Id.* In such a case, according to the court, "the alleged fraud supersedes the results that ordinarily flow from consultation with an attorney." *Id.* The court concluded the case may well present a situation "where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights." *Id.* As a result, there was a triable issue as to whether Meyer could in fact prove that the misrepresentation or omission of the defendants had an important effect in causing him to postpone filing the charge with the department of labor. *Id.*

Another case is *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876 (5th Cir. 1991). In *Rhodes*, a fifty-six-year-old plaintiff named Rhodes was discharged by his employer on October 15, 1986. *Id.* at 877. At the time of the discharge, the employer told Rhodes that his discharge was a result of a reduction in the work force and that the company would consider rehiring him. *Id.* Yet, on or about December 19, the company hired a forty-two-year-old person to replace him. *Id.* Rhodes filed his complaint fifteen days outside the applicable filing limitation of 180 days from the alleged discriminatory act. *Id.* After a trial which found the company liable for age discrimination, the magistrate judge dismissed the case with prejudice for failure to file a timely complaint with the EEOC. *Id.* at 877–78.

The Fifth Circuit reversed. *Id.* at 882. The court emphasized that even though Rhodes did not file his complaint within 180 days of the discriminatory act, his federal suit was not necessarily time-barred. *Id.* at 878. According to the court, "If the defendant did conceal facts or misled the plaintiff and thereby caused the plaintiff not to assert his rights within the limitations period, the defendant is estopped from asserting the EEOC filing time as a defense." *Id.* at 879.

Based on its review of the record, the court concluded Rhodes was entitled to assert equitable estoppel, and his case should not have been dismissed for failure to file a timely claim with the EEOC. *Id.* at 880–81. Among other things, the court found there was no reduction in work force related to Rhodes's position. *Id.* at 881. Further, the evidence at trial revealed the company had no intention of rehiring Rhodes. *Id.* Yet the court emphasized repeatedly that Rhodes was told he would be considered for rehiring. *Id.* While the court noted that misrepresentations may not give rise to equitable estoppel when the plaintiff was not diligent, there was no showing of lack of diligence in this case. *Id.* at 882.

A fourth illustrative case is *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023 (11th Cir. 1994). In *Sturniolo*, a plaintiff named Sturniolo was told by his supervisor that his position was being eliminated due to a lack of funds. *Id.* at 1024–25. Sturniolo asserted he believed the statements until several months later when he learned the company hired a younger person for the position. *Id.* at 1025–26. Sturniolo filed a claim 214 days after he was terminated. *Id.* at 1024. At the time, the ADEA required complaints be filled within 180 days of the alleged unlawful practice. *Id.* The district court granted summary judgment for

the employer on the ground the undisputed facts established that the complaint was untimely. *Id.*

The Eleventh Circuit reversed. *Id.* at 1026. The court noted the mere fact that the plaintiff was fifty-eight years old at the time of his termination did not constitute sufficient evidence to file a claim of age discrimination. *Id.* The court declared, "When an 'employer has articulated a presumptively legitimate reason for discharging an employee, the latter must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.' " *Id.* (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (lst Cir. 1990)). The court concluded the district court improperly granted the employer summary judgment on the facts presented. *Id.*; *see also Tucker v. United Parcel Serv.*, 657 F.2d 724, 727 (5th Cir. 1981) (holding tolling applies when black seasonal employees were told that they would not be recalled, but employer recalled almost exclusively white seasonable employees).

Although these cases provide a reasonably good overview of application of equitable estoppel, there is another issue lurking in the cases: does knowledge of facts that would establish a prima facie case prevent a putative plaintiff from asserting equitable estoppel to toll the running of a filing limitation of a civil rights statute?

The answer in the caselaw seems to be that equitable estoppel may still apply if the plaintiff can show that reliance on the misrepresentations was reasonable, the misrepresentations caused the delay in the filing of a complaint, and the employee exercised reasonable diligence under all the facts and circumstances. For instance, in *Dorsey*, the Eighth Circuit stated that in order for equitable estoppel to apply, the

plaintiff must have been aware of a prior claim and then have been lulled by employer misrepresentations into delaying the filing of a claim. 278 F.3d at 835–36; *see also Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1280 (5th Cir. 1986).

There is, however, a strand of equitable estoppel cases that take a somewhat more cautious approach than the above cases. An interesting case is *Cada*, 920 F.2d 446. In *Cada*, the plaintiff attempted to assert equitable estoppel to avoid dismissal for filing a claim outside the filing limitations. *Id.* at 450–51. The plaintiff asserted the employer's characterization of the reason for discharge as a reorganization was a ruse to conceal the plan to unlawfully terminate him. *Id.* at 451.

The Seventh Circuit rejected the claim. *Id.* at 453. According to the court, in order for equitable estoppel to apply in an age discrimination case, the employer misconduct must be above and beyond the wrongdoing in the particular case. *Id.* Allowing equitable estoppel to arise from the facts of the underlying wrongdoing, declared the court, would be the equivalent to requiring a defendant to state "[w]e're firing you because of your age." *Id.*

The court presented an example of what would amount to equitable estoppel. *Id.* at 451. According to the court, equitable estoppel would apply when an employer promised not to raise a limitations defense in order to lull a plaintiff into complacency and then turned around and attempted to enforce the filing limitations. *Id.*

It is clear under *Cada* that mere employer silence on the reasons for adverse employment action does not give rise to equitable estoppel. If an omission was sufficient to give rise to equitable estoppel, the *Cada* warning would become reality: anything less than confession of age discrimination would toll the statute. There is support in the caselaw for

the proposition that equitable estoppel requires affirmative misconduct on the part of the defendant. *See, e.g., Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (requiring active deception); *Lavery v. Marsh*, 918 F.2d 1022, 1028 (lst Cir. 1990) (requiring "affirmative misconduct"); *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1192 (D.C. 1980) (holding "mere silence, failure to disclose, or ignorance of facts establishing a claim" insufficient to show affirmative misconduct to support equitable estoppel).

Yet, the *Cada* court also noted when an employer prepares false documentation tending to negate any inference of age discrimination, equitable estoppel might be available. 920 F.2d at 451. So it is not entirely clear under *Cada* when false statements would provide a legally sufficient predicate for equitable estoppel. When is a false statement considered "independent" of the discriminatory act? This issue was not resolved in *Cada.*

### C. Application of Equitable Tolling Doctrines.

1. *Introduction.* We now turn to the question of whether the 300-day filing limitation may be tolled in this case either through the application of the discovery rule or equitable estoppel. In so doing, we recognize that whether tolling is available is often a fact-intensive inquiry for which a ruling on a motion to dismiss or at the summary judgment stage is often inappropriate. *See Cocke*, 817 F.2d at 1561. Yet, it is also true that a plaintiff may plead himself out of court by alleging facts that provide the employer with a bulletproof defense and foreclose application of equitable tolling. *See Menominee Indian Tribe of Wis. v. United States*, ___ U.S. ___, ___, 136 S. Ct. 750, 755–56 (2016).

2. *Discovery rule.* We first consider whether Mormann is entitled to relief through application of the discovery rule. The district court,

among other things, found that Mormann was less than diligent in investigating his potential claim. It seems unlikely, however, that inquiry with IWD regarding the reason Mormann did not get the job would have produced a declaration from IWD that Wahlert was concerned that Mormann was considering retirement, thereby at least suggesting a discriminatory animus. If a job applicant brings up the subject, employers are not likely to admit a motivation that would expose the employer to a claim of unlawful discrimination. Employers will likely prefer that such preferences remain secret. *See Reeb*, 516 F.2d at 931.

We also decline to rely on the district court's causation analysis—namely, that the decision was really made by a committee and not by Wahlert. In the employment cases and literature, the effort to thrust responsibility for employment decisions from a potentially biased decision maker onto other actors is referred to as "the cat's paw" defense. *See* Tim Davis, *Beyond the Cat's Paw: An Argument for Adopting a "Substantially Influences" Standard for Title VII and ADEA Liability*, 6 Pierce L. Rev. 247, 248 (2007). The plaintiff clearly pled Wahlert influenced the decision, and the deposition of Wahlert only indicates that *at the time* the recommendation to hire Pals was submitted to her, it was not necessary to discuss the reason why Mormann was not her choice for the position. The deposition of Wahlert leaves open the possibility that she communicated her preferences at other times and places in a fashion that influenced the committee's deliberations.

Yet, under the undisputed facts established at the hearing, Mormann was aware he was not hired for the position in March 2014. It is also undisputed he was aware of his own age and his qualifications for the position of deputy workers' compensation commissioner. Further, in his briefing before the district court, Mormann conceded he was aware

that the person hired for the position is a younger person and did not raise lack of knowledge of Pals's age in the district court as an issue in the proceeding. Nonetheless, Mormann claims he did not know the true reason he did not get the job until he learned of the Wahlert deposition in March 2015.

Under these circumstances, we conclude the defendant has met its burden of showing that Mormann is not entitled to avail himself of the discovery rule to save his case from dismissal for failure to comply with the filing requirements of Iowa Code section 216.15(13). It appears in March 2014, Mormann had knowledge of facts sufficient to support a prima facie case of age discrimination. He knew he was a member of the protected class, he was qualified for the job, he suffered an adverse employment action, and a younger worker was hired to replace him. In short, he knew facts that provided him with a prima facie case of age discrimination. *See Bearden*, 529 F.3d at 832 (finding inference of age discrimination if plaintiff can prove younger person hired for job); *Lewis*, 591 F.3d at 1038 (same).

When a plaintiff is on notice of a prima facie case of discrimination, the discovery rule is not available to toll the running of the filing requirements in civil rights statutes. *See Dring*, 58 F.3d at 1329; *Pruet Prod.*, 784 F.2d at 1279–80. Later discovery of facts may make the claim stronger,[5] but even under a relatively robust approach to the discovery

---

[5]The plaintiff maintains the later discovery of the statements by Wahlert that she was concerned about Mormann's retirement plans supports an age discrimination claim in this case. In an excerpt from her deposition in the Godfrey matter, Wahlert stated concern about "[t]he statements that [Mormann] had made to people and during his interview that he thought he was going to retire." In *Ware v. Howard University, Inc.*, the court found age discrimination where the vice president told the plaintiff that he had not been considered for the promotion "because he was too close to retirement." 816 F. Supp. 737, 745–46 (D. D.C. 1993). In *Hawley v. Dresser Industries, Inc.*, the Sixth Circuit held a jury could infer that the defendants fired the plaintiff because of his age when the plaintiff's boss testified that he believed plaintiff was close to retirement

rule, the knowledge of facts sufficient to make a prima facie case of discrimination is sufficient to trigger the running of the filing limitations. *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 645 (5th Cir. 1988) (holding plaintiff need not know all evidence in order for the filing limitation to begin to run). As a result, the district court did not err in refusing to apply the discovery rule to toll the running of the filing limitation in this case.

However, even when a party has knowledge of a prima facie case, misrepresentations by the employer that the employer knows or should have known would lull the employee into inaction may provide a vehicle to toll the running of the filing limitation under the equitable estoppel doctrine. *Pruet Prod.*, 784 F.2d at 1280.

3. *Equitable estoppel.* We now turn to the question of equitable estoppel. We begin by noting that before the district court, Mormann did not attack the March 7, 2014 letter from Godfrey as containing affirmatively misleading statements and as part of the scheme of IWD to

---

and would not mind being terminated, and in light of the fact that younger employees who were also discharged were placed in other positions in the organization. 958 F.2d 720, 723–24 (6th Cir. 1992). In *Schaffner v. Hispanic Housing Development Corp.*, the court held a reasonable jury could conclude that there was direct evidence of age discrimination when, among other things, the plaintiff's immediate supervisor averred that she was directed to downgrade the plaintiff's performance reviews because the plaintiff was close to retirement. 76 F. Supp. 2d 881, 881, 883 (N.D. Ill. 1999). Another federal district court found there was a genuine issue of material fact as to whether age was a motivating or determinative cause in the plaintiff's firing when, among other things, the plaintiff asserted that management told him to investigate which other employees were close to retirement in an effort to reduce staff. *Martin v. Gen. Elec. Co.*, 891 F. Supp. 1052, 1058 (E.D. Penn. 1995). Other courts, however, have held employers are entitled to consider the long term potential of employees when making business decisions. *See Cox*, 163 F.3d at 498; *Roberts v. Design & Mfg. Servs., Inc.*, 167 F. App'x 82, 84–85 (11th Cir. 2006); *Woythal*, 112 F.3d at 247; *Young v. Hobart W. Grp.*, 897 A.2d 1063, 1071 (N.J. Super. Ct. App. Div. 2005). We take no position on if and when statements related to potential retirement may be considered evidence of age discrimination.

hide the real reason for his discharge.[6]  Instead, Mormann simply noted that "nothing contained within this letter gave the plaintiff the impression that he was passed over for the position based upon his age." Before the district court, the theory was one of omission—IWD omitted from the letter a statement of the true reason for his discharge, namely, that he was not hired because of age discrimination.  The concealment of the asserted bias of Wahlert is the only equitable estoppel claim preserved for appellate review.  *See Meier v. Senecaut,* 641 N.W.2d 532, 540 (Iowa 2002).

An omission theory of equitable estoppel, however, simply is insufficient in the context of this case.  Unlike cases involving intentional and material misstatements in which the employer knew or should have known would cause the employee to delay filing a complaint, omission cases cut too deeply into the 300-day statutory requirement.  As noted by the reasoning in *Cada,* the 300-day limitation cannot be tolled simply because the defendant omits to state that age discrimination was the true reason for dismissal.  *See* 920 F.2d at 451.  Allowing equitable estoppel to apply where an employer merely remains silent regarding its discriminatory motive would essentially eliminate the 300-day filing

---

[6]The caselaw considering whether equitable estoppel may be invoked when an employer offers encouragement about other jobs in a letter announcing an adverse employment action is mixed.  For example, in *Franci v. Avco Corp.,* the court found a letter that suggested that the employee might be eligible for other jobs might toll the filing requirement because the employee should not be expected to jeopardize his chances by filing a complaint.  538 F. Supp. 250, 254 (D. Conn. 1982); *see also Labus v. Navistar Int'l Transp. Corp.,* 740 F. Supp. 1053, 1058–59 (D. N.J. 1990) (filing requirement equitably tolled where employee might have been lulled into deferring filing of complaint by employer's representations that he would look for another position for employee within the company).  On the other hand, in *Cole v. CBS, Inc.,* the court rejected equitable tolling where the employer encouraged a terminated employee to explore other employment opportunities within the company.  634 F. Supp. 1558, 1564 (S.D.N.Y. 1986); *see also Sharpe v. Phila. Hous. Auth.,* 693 F.2d 24, 26–28 (3d Cir. 1982) (rejecting equitable tolling where terminated employee was permitted to appeal employer's decision to terminate and employer held out hope of reemployment).

limitation. Instead, in order to state a claim for equitable estoppel in the context of a filing limitation, the plaintiff must show an affirmative misrepresentation that the employer knew or should have known would delay the filing of a timely claim. Mormann did not meet this requirement and, as a result, the district court did not err in dismissing the petition.

**IV. Conclusion.**

For the above reasons, the judgment of the district court in this case is affirmed.

**AFFIRMED.**

All justices concur except Hecht, J., who takes no part.