**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46818**

| | | |
|---|---|---|
| JONATHON CLYDE GREGORY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | Boise, May 2020 Term |
| v. | ) | |
| | ) | Opinion Filed: July 15, 2020 |
| RICHARD R. STALLINGS, an individual, | ) | |
| and EILEEN STALLINGS, an individual, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Darren B. Simpson, District Judge.

The district court's decision is <u>affirmed</u>.

Parmenter Rivera, LLP, Blackfoot, for Appellant. Brianna N. Rosier argued.

Baker & Harris, Blackfoot, for Respondents. Jared M. Harris argued.

_____

BURDICK, Chief Justice.

Jon Gregory appeals a district court's award of summary judgment in favor of Richard and Eileen Stallings (collectively, "the Stallings") in a breach-of-contract action stemming from the parties' oral agreement to develop real property in Rexburg, Idaho. The property was sold in December 2012. Gregory—believing the Stallings wrongfully withheld a portion of the proceeds—filed a complaint in September 2017. The district court granted the Stallings' subsequent motion for summary judgment, concluding that Gregory's cause of action was barred by Idaho Code section 5-217's four-year statute of limitations. Gregory timely appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns four-acres of land in Rexburg, Idaho (the Property). At some point prior to 2007, Gregory purchased two acres of the Property for $205,000 (Parcel A) with the plan to develop it into a student-housing complex. Richard Stallings contacted Gregory around September 2007 and expressed interest in purchasing the other two acres (Parcel B) and "going in as partners" or "joint venturers" in the Property's development. The Stallings purchased Parcel B on September

1

27, 2007. The parties' oral agreement was to develop the Property and share profits equally after their respective contributions were repaid.

In February 2009, Gregory conveyed his interest in Parcel A to Pioneer Point, LLC, an entity tasked with developing the property by constructing the initial infrastructure and buildings. In 2009, the Stallings and Pioneer Point, LLC, entered into a construction loan contract with Century Mortgage Company to finance the development and signed a promissory note for $945,000, to be repaid within six-months with the option to extend for an additional six months. The loan was comprised of contributions from many investors. According to Gregory, he sold a separate parcel and invested the proceeds (around $292,000) into the development to keep the project viable.

At some point after the housing-market crisis of 2008, the parties decided to sell the property before it was fully developed to recoup their losses. On May 2, 2012, Pioneer Point, LLC, transferred Parcel A to the Stallings, leaving the Stallings with sole ownership of the entire Property. The parties secured a buyer and anticipated that the expected closing transaction would pay off the investors and then pay proceeds to Gregory and the Stallings in two installments. The first installment would take place on the date of closing with the second installment being paid out at some point thereafter.

According to Gregory, he and the Stallings "had originally agreed to divide the anticipated balance of the proceeds of $433,000" equally, "each of them receiving $216,758.86." Regardless of the amount of proceeds, Gregory alleged that "[t]he balance of the proceeds from the sale of the property was to be divided between [him and the Stallings]."

On November 14, 2012, Richard Stallings emailed Garrett Sandow, an attorney who acted as a liaison between Gregory and Richard Stallings. In the email, Richard Stallings offered a proposed division for the proceeds from the Property's sale, explaining that he had invested $256,000 in the Property. Once the property was sold, Stallings stated that he "plan[ned] on taking [$106,000 from the 'first draw' and $150,000 from the 'second draw'] and then giving the balance of each draw to Garret[t] Sandow for Johns [sic] dispersal [sic]."

On December 21, 2012, the Stallings sold the Property, along with its improvements, to Rockwell Court Limited Partnership for a total sum of $1,086,438.89. As part of the settlement, the construction-loan investors were repaid. The final settlement statement indicated that around $94,000 in cash was paid to the Stallings, but that $300,000 was withheld. Gregory did not receive any payment from the Stallings from this initial payout.

Around a week later, on December 27, 2012, Stallings sent Sandow a statement indicating that the second payoff received from the sale of the Property was $300,000. In that Statement,

Stallings allocated $144,517.72 of the payment to himself, and $155,482.28 to Gregory. The statement indicated that these payments would be disbursed in the "Next Pay out end of January or first of February 2013." Sandow relayed this proposal to Gregory, who accepted it. The end of January and the first of February passed and Gregory did not receive any payment from the Stallings.

On September 9, 2013, Tim Cobb, an individual also involved in the development, forwarded Sandow an August 27, 2013, email he had received from Richard Stallings. The email detailed Richard Stallings's belief that many of the development's shortcomings were Gregory's fault. The email concluded: "I feel in order for me to get a return on my investment there is no money owed to John from the current sell."

On September 2, 2017, nearly four years after receiving that email, Gregory filed a verified complaint. He pleaded (1) breach of contract, and (2) breach of implied contract, arguing that he entered into an "express" or "implied agreement" with the Stallings "whereby [Gregory] agreed to pay for one half of the land necessary to develop and to otherwise achieve improvement of [the Property]." Gregory alleged that the Stallings breached the agreement by "failing and refusing to pay or reimburse [him] for his contributions and investments, both of time and money." Gregory also pleaded (3) quantum meruit/quasi contract, arguing that he provided financial resources and labor to improve the Property at the Stallings' request and to their benefit without compensation.

The Stallings filed a motion for summary judgment arguing that Gregory's claim was barred by the statute of limitations and the statute of frauds. They highlighted that Gregory had failed to produce a written contract and further argued that any implied or quasi contract was barred by the statute of limitations for oral contracts under Idaho Code section 5-217. In response, Gregory argued that, for purposes of his lawsuit, no breach occurred until he became aware of Richard Stallings' email on September 9, 2013. Gregory also asserted that equitable estoppel should bar the Stallings from asserting the statute of limitations as a defense. Gregory argued that the Stallings falsely represented that they would pay him from the sale, and that he relied on their representations to his detriment.

The district court determined that the statute of frauds did not apply, but granted the Stallings' motion on the statute-of-limitations grounds. The district court explained that the breach of the implied contract would have occurred when Stallings sold the property, received the funds, and did not pay Gregory the portion he believed he was due. As that was four years and eight months prior to filing the complaint, Gregory's claim was barred by Idaho Code section 5-217.

Gregory moved for reconsideration, arguing that the district court's decision was based on the incorrect premise that the sale of the property occurred in one complete transaction on December 21, 2012. Gregory claimed that only a portion of the sale price was paid on December 21, 2012, but that around $300,000 earmarked for the Stallings and Gregory was to be disbursed around January or February 2013, and that the second disbursement was further delayed. Gregory argued that Stallings would not receive the final payment until around August 2013, which is when he first indicated to anyone that he would not pay Gregory, and that Gregory only learned about Stallings intent not to pay him on September 9, 2013.

The district court denied the motion, reasoning that "[r]egardless of when Gregory anticipated receiving funds, the oral contract of which he complains began on December 21, 2012 when the Stallings sold the Property" because "[o]n that date, the subject of the oral contract (the Stallings' sale of the Property) took place . . ." The district court rejected Gregory's argument that draws were a fluid process, explaining that while the parties' contract only contained a "mercurial understanding that payment would be made in the future," Gregory nevertheless "knew that he was owed money as of December 12, 2012, and that he received nothing on that date."

Gregory timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in denying Gregory's motion for reconsideration?
2. Should this Court apply a discovery rule to the statute of limitations found at Idaho Code section 5-217?
3. Is Gregory entitled to invoke the doctrine of equitable estoppel?
4. Are the Stallings entitled to attorney's fees under Idaho Code section 12-120(3)?

## III. STANDARD OF REVIEW

"Appellate review of a district court's ruling on a motion for summary judgment is the same as that required of the district judge when ruling on the motion." *Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 479, 328 P.3d 456, 459 (2014) (citing *Liberty Northwest Ins. Co. v. Spudnik Equip. Co.,* LLC, 155 Idaho 730, 732–33, 316 P.3d 646, 648–49 (2013)). The district court "must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). Not only are "all disputed facts . . . liberally construed in favor of the non-moving party," but "[t]he burden of proving the absence of a material fact rests at all times upon the moving party." *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991) (citations omitted). That said, the resisting party's case "must not

4

rest on mere speculation" because "a mere scintilla of evidence" is insufficient to create a genuine issue of fact. *Id.*

"[W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Wickel v. Chamberlain*, 159 Idaho 532, 536, 363 P.3d 854, 858 (2015) (citing *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012)). In other words, "when the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Massey*, 156 Idaho at 480, 328 P.3d at 460 (quoting *Bremer, LLC v. E. Greenacres Irrigation Dist.*, 155 Idaho 736, 744, 316 P.3d 652, 660 (2013)).

This Court exercises free review over the interpretation of a statute and applying the facts to the law. *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 931, 277 P.3d 374, 378 (2012) (citation omitted).

## IV. ANALYSIS

### A. The district court properly granted summary judgment to the Stallings because Gregory's cause of action is barred by the statute of limitations found in Idaho Code section 5-217.

Gregory argues that the question of when the breach occurred in this case was a disputed issue of material fact that should have precluded summary judgment. He claims that he did not anticipate receiving any proceeds from the first draw, and that the payment due under the second draw kept getting pushed out so no breach occurred until he knew that the Stallings did not intend to pay him. Specifically, he asserts that the second draw was extended because there were delays in receiving funds from the buyer and the Stallings agreed to pay off third parties before remitting payment to Gregory. Gregory also argues that the district court should have applied the "reasonable amount of time" standard for determining when the breach occurred because there was no time frame specified for when Stallings should have paid him. For the reasons below, we disagree. We conclude that there are three possible dates on which Gregory's cause of action could have accrued, but all three fall outside the statute of limitations.

This case concerns an oral contract. "[T]he question as to the existence of an oral contract is one of fact." *Spence v. Howell*, 126 Idaho 763, 770, 890 P.2d 714, 721 (1995) (citation omitted). The terms of a contract must be "sufficiently definite and certain in order to be enforceable." *Black Canyon Racquetball Club, Inc. v. Idaho First Nat. Bank, N.A.*, 119 Idaho 171, 173, 804 P.2d 900, 902 (1991). "Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the

5

situation of the parties, and the circumstances attending the performance." *Swafford v. Huntsman Springs, Inc.*, 163 Idaho 209, 213, 409 P.3d 789, 793 (2017) (quoting *Curzon v. Wells Cargo, Inc.*, 86 Idaho 38, 43, 382 P.2d 906, 908 (1963)).

Idaho Code section 5-217 provides a four-year statute of limitations for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing." I.C. § 5-217. "The statute of limitations does not begin to run until a claim accrues upon the breach of the contract." *Spence*, 126 Idaho at 770, 890 P.2d at 721. "The question of when the breach occurred is a factual one." *Id.*

For purposes of the Stallings' summary judgment motion, we accept as true the terms of the contract outlined in Gregory's complaint. Specifically, we accept that, by the time Gregory and the Stallings decided to sell the property rather than fully develop it, they had agreed to equally divide the anticipated amount of the proceeds from that sale.

With this understanding, we agree with the district court that Gregory's cause of action accrued on December 21, 2012, because the Stallings breached the contract when they failed to pay Gregory his equal share of the proceeds on that date. The record shows that after paying off the investors, the Stallings received a total of around $94,000 from the first draw from the Property's sale on December 21, 2012. Instead of paying Gregory approximately $47,000, Stallings kept the entire remaining sum and did not pay Gregory anything. At that point in time, the Stallings had breached the contract and Gregory could have filed suit on that date. Because more than four years elapsed from December 21, 2012, to when Gregory filed his complaint on September 2, 2017, the district court properly determined that Gregory's cause of action was barred by Idaho Code section 5-217. Thus, summary judgment was appropriate.

We are unpersuaded by Gregory's argument that the structure of the parties' agreement changes this outcome. Even assuming the Stallings did not receive the entire first draw on December 21, 2012, Gregory knew that he was not receiving his equal share from the initial payout on December 27, 2012, when he received the statement informing him that he would not receive a payout until the second draw.

Even if Gregory assented to the arrangement proposed in Richard Stallings's November 14, 2012, email, and thus modified the parties' contract, his cause of action would still be barred by the statute of limitations. The allegedly modified agreement envisioned Richard Stallings taking $105,000 from the first draw and giving the remainder to Gregory. Because the amount to be taken by Stallings under the alleged modified agreement ($105,000) was more than the entire payout from the first draw ($94,000), there would have been no balance to pay to Gregory under the modified

6

agreement, and thus, no breach by Richard Stallings. However, this does not save Gregory's cause of action. The facts in the record—namely the November 14, 2012, email shows that Gregory agreed to receive $155,482.28 from the "Next Pay out" which was to take place at the "end of January or first of February 2013." Stallings never paid out the second draw as proposed. So while Gregory is correct to argue that contractual terms which carry no date of performance are subject to a "reasonable time" standard, the evidence produced show that the parties' agreement had a date of performance. That is, Gregory was due money on February 1, 2013. When Gregory did not receive a payout on that date, the Stallings would have breached the modified contract and Gregory could have sued. Thus, his claim would still be barred because it accrued outside the four-year statute of limitations.

Although Gregory argues that the second payout kept getting pushed out and Richard Stallings assured him he would get paid, he failed to produce admissible evidence on this point. For instance, he produced the following statements in an affidavit:

> The construction project took longer to complete than anticipated, thus delaying the payouts or draws to me and Stallings for several months, well into 2013. The draws were sent directly to Stallings, but it was my understanding that there were several smaller draws paid out over the spring and summer of 2013. Further, Stallings had advised me that I would receive my money last—from the final draw or draws.

To support this contention, Gregory included an unsigned contract between himself and Memphis Development Group, the December 27, 2012, Statement, and the September 9, 2013, email. Stallings objected to the statements made in the affidavit for lack of foundation, and to the unsigned contract for relevance. Gregory made no argument in response to these objections. Memphis Development did not purchase the property, nor did Gregory have ownership of any portion of the Property when the Property was sold to Rockwell Court Limited Partnership. Paragraph 4 of the affidavit is conclusory and lacked foundation. As such, Gregory failed to produce admissible evidence supporting his contention that the February 1, 2013, date was further modified by the parties.

As can be seen, all three of the possible accrual dates rest outside the relevant statute of limitations. Accordingly, the district court properly granted summary judgment to the Stallings because Gregory's cause of action is barred by the statute of limitations.

**B. Idaho Code section 5-217 does not contain a discovery rule.**

In the alternative, Gregory argues for the application of a "discovery rule" to the statute of limitations set forth in Idaho Code section 5-217. Gregory concedes that this Court has declined to

impose a discovery rule where not expressly provided for, but directs this Court's attention to numerous cases he claims demonstrate that this Court has effectively imposed a discovery rule for oral contracts. We disagree with Gregory's characterization of those cases and decline to impose a discovery rule on Idaho Code section 5-217.

A "discovery rule" in the context of a statute of limitations provides that "a limitations period does not begin to run until the plaintiff discovers (or reasonably should have discovered) the injury giving rise to the claim" and usually "applies to injuries that are inherently difficult to detect, such as those resulting from medical malpractice." Black's Law Dictionary (11th ed. 2019) (defining "discovery rule"). This Court has taken a strict approach to determining whether a discovery rule applies to statutes of limitations expressed in statutes. *See Theriault v. A.H. Robins Co.*, 108 Idaho 303, 308, 698 P.2d 365, 370 (1985).

There is no statutory authority supporting the application of a discovery rule to breaches of oral contracts. To reach this conclusion, we begin with the plain words of the statute. *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 931, 277 P.3d 374, 378 (2012). Title 5, Chapter 2 of the Idaho Code provides that "[c]ivil actions can only be commenced within the periods prescribed in this chapter *after the cause of action shall have accrued*, except when, in special cases, a different limitation is prescribed by statute." I.C. § 5-201 (emphasis added). Idaho Code section 5-217 simply provides that "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing" must be brought within four years. Thus, the plain language of the statutory text provides that the clock begins to run upon the claim's accrual—not its discovery. Therefore, because there is no "different limitation" prescribed by statute, we decline to insert one. *See Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cty.*, 159 Idaho 84, 89, 356 P.3d 377, 382 (2015) (explaining that this Court is "reluctant to second-guess the wisdom of a statute" and "unwilling to insert words into a statute"); *In re Adoption of Doe*, 156 Idaho 345, 349, 326 P.3d 347, 351 (2014) ("The literal words of the statute 'must be given their plain, usual, and ordinary meaning; . . . if the statute is not ambiguous, this Court does not construe it, but simply follows the law as written.'") (quoting C*ity of Sandpoint v. Sandpoint Independent Highway Dist.*, 139 Idaho 65, 69, 72 P.3d 905, 909 (2003)).

Likewise, Gregory's argument that a discovery rule has been applied to claims arising under Idaho Code section 5-217 misses the mark. For example, Gregory's reliance on *Spence v. Howell* is misplaced. 126 Idaho 763, 771, 890 P.2d 714, 722 (1995). There, the question before this Court was whether adequate evidence existed to support a district court's denial of a motion for a judgment notwithstanding the verdict. *Id.* at 769, 890 P.2d at 720. In *Spence*, the parties agreed to develop land for a Christian retreat. *Id.* at 765, 890 P.2d at 716. After the plaintiffs transferred the property

to the defendants, the defendants began using the property in a manner inconsistent with their agreement. *Id.* at 767, 890 P.2d at 718. A trial was held on breach-of-contract and fraud theories, and the jury found for the plaintiffs. *Id.* The defendants moved for a judgment notwithstanding the verdict, arguing that both the fraud and contract actions were barred by the statute of limitations. *Id.* This Court determined that there was adequate evidence to allow both claims to go the jury, and that the jury could have found that the defendants breached the contract within the applicable statute of limitations. *Id.* at 771, 890 P.2d at 722. *Spence* addressed a JNOV motion in a case where the parties genuinely disputed not only when the breach occurred, but whether a breach actually occurred and whether a contract actually existed. Here, the Stallings do not dispute the existence of the contract for purposes of their summary judgment motion, and Gregory does not dispute that the Stallings did not pay him on December 21, 2013, December 27, 2013, or February 1, 2014. Gregory's dispute centers on the legal effect of these facts, but not on whether these facts are true.

Similarly, Gregory's claim that this Court applied a discovery rule to a breach-of-contract action in *Swafford v. Huntsman Springs, Inc.*, is incorrect because that case concerned an anticipatory breach of contract. 163 Idaho 209, 213, 409 P.3d 789, 793 (2017). *Swafford* stands for the proposition that when a term in a written property development contract lacks a time for performance, then the term must be performed in a "reasonable time." *Id.* at 213, 409 P.3d at 793. However, the contractual term at issue in *Swafford* was a developer's promise to provide the homebuyer with access to a certain street. *Id.* at 212, 409 P.3d at 792. This Court explained that it need not locate the precise moment the property developer breached this term because the developer's actions prior to such date were so inconsistent with fulfilling it (i.e., landscaping, planting trees, and constructing a walking path where the street should have gone), that the developer's actions constituted an anticipatory breach of contract, causing the cause of action to accrue. *Id.* at 213, 409 P.3d at 793. Because the "reasonable time" could not extend beyond the anticipatory breach, the buyer's cause of action was barred because the claim was filed more than 8 years after that anticipatory breach, and thus beyond the five years for written contracts under Idaho Code section 5-216. *Id.*

Lastly, Gregory's reliance on *Heileson v. Cook* is also misplaced because it operated under an entirely separate legal framework. 108 Idaho 236, 238, 697 P.2d 1250, 1252 (Ct. App. 1985). *Heileson* involved an action for an accounting during the winding up of a partnership where the partners disputed whether and when the partnership had been wound up and terminated. *Id.* at 238, 697 P.2d at 1252. Here, while Gregory referred to the parties as "partners" and "joint venturers" in his complaint and in his answers to interrogatories, he made no argument, either below or on appeal,

that the parties' agreement was a partnership subject to Idaho's Uniform Partnership Act. Nor did he choose to file an action for an accounting. As such, *Heileson* does not apply.

In summary, Gregory has presented no authority that convinces us to look beyond the plain terms of Idaho Code section 5-217. Because that Code section does not provide for a discovery rule, we decline to adopt one.

## C. Gregory's equitable-estoppel claim fails because he cannot show that he pursued his claim in a reasonable amount of time.

Even if his claim is barred by the statute of limitations, Gregory argues that the Stallings should be estopped from asserting it as a defense in this action. The Stallings argue that Gregory did not plead equitable estoppel nor seek to amend his complaint. Even so, the Stallings continue, his claim fails because he did not bring his action within a reasonable amount of time.

"Equitable estoppel is available to a plaintiff when the defendants, by their representations or conduct, kept the plaintiff from pursuing a cause of action during the limitation period." *Knudsen v. Agee*, 128 Idaho 776, 779, 918 P.2d 1221, 1224 (1996). It is a "non-statutory bar to a statute of limitation defense." *J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 126 Idaho 532, 534, 887 P.2d 1039, 1041 (1994), abrogated on other grounds by *Day v. Transportation Dep't*, 166 Idaho 293, 458 P.3d 162 (2020) (recognizing waiver as an additional non-statutory bar to the statute-of-limitations defense). The doctrine does not "extend" the statute of limitations, but prevents a party from asserting it, even if it would otherwise bar the action. *Id.* The party asserting equitable estoppel must show:

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth;
>
> (2) that the party asserting estoppel did not know or could not discover the truth;
>
> (3) that the false representation or concealment was made with the intent that it be relied upon; and
>
> (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Id.* Even if a party is entitled to equitable estoppel, its preventative force "does not last forever[.]" *Ferro v. Soc'y of Saint Pius X*, 143 Idaho 538, 540–41, 149 P.3d 813, 815–16 (2006) "It lasts only for a reasonable time after the party asserting estoppel discovers or reasonably could have discovered the truth." *Id.* (citing *Knudsen*, 128 Idaho 776, 918 P.2d 1221).

As an initial matter, we reject the Stallings' argument that Gregory's failure to plead equitable estoppel precludes him from arguing it on appeal and should have precluded the district

court from considering it. Equitable estoppel is a response to a statute-of-limitations defense and, as such, asserting it in response to a motion for summary judgment is appropriate.

That said, Gregory needed to produce evidence to support the claim in order to resist summary judgment, which he failed to do. To show that the Stallings should be barred from asserting Idaho Code section 5-217 as a defense, he points only to the affidavit he filed, which provides as follows:

> I continued to receive information regarding the progress of the development and assurances that the draws would be forthcoming through 2013, until I actually received information by email from Stallings to Tim Cobb and forwarded to Mr. Sandow (as of September 9, 2018) [sic] that he did not intend to pay me, as he previously had agreed . . . .

This conclusory statement fails to explain how *the Stallings'* actions and representations caused Gregory to wait to pursue his action until after he received the September 9, 2013, email. Put differently, Gregory has not shown how he was prevented from discovering earlier that the Stallings did not intend to pay him, nor has he alleged that the Stallings sought to dissuade him from pursuing his claim during the available three years and five months that remained in the statute-of-limitations period after he received the September 9, 2013, email. *See Knudsen*, 128 Idaho at 779, 918 P.2d at 1224. The facts show that Gregory had clear knowledge that the Stallings were not going to pay him from the first draw on December 27, 2012, at the latest. Gregory also could have discovered that the Stallings were not going to pay him from the second draw when he received no payment on February 1, 2013. Gregory has produced only a conclusory statement in an affidavit to suggest that the Stallings strung him along for, at most, a little over half a year, until he discovered, through Sandow, that the Stallings did not intend to pay him. This does not demonstrate that the Stallings kept Gregory "from pursuing a cause of action during the limitation period." *Knudsen*, 128 Idaho at 779, 918 P.2d at 1224. And while Gregory seems to argue that Sandow told him that he could wait until September 9, 2017, in order to file, he does not argue that he took Sandow's advice as a representation from the Stallings. The focus remains on whether *the Stallings* induced Gregory to sit on his rights. Because Gregory presented no evidence to this effect, we decline to apply equitable estoppel under the circumstances.

**D. The Stallings are entitled to attorneys fees under Idaho Code section 12-120(3).**

The Stallings argue that they are entitled to attorneys fees on appeal under Idaho Code section 12-120(3) because the gravamen of this matter is a commercial transaction and they are the prevailing party on appeal. Gregory does not offer an argument against the application of section 12-120(3). Under Idaho Code section 12-120(3), the prevailing party in any suit involving a

commercial transaction is entitled to attorneys fees on appeal. Here, Gregory's complaint asserts contractual causes of actions and centers on the parties' agreement for the development of a property for commercial purposes. Accordingly, because the Stallings are the prevailing party on appeal, they are entitled to attorneys fees.

## V. CONCLUSION

For the above reasons, we affirm the district court's order denying Gregory's motion for reconsideration and affirm the district court's judgment dismissing Gregory's complaint. We award costs and attorneys fees to the Stallings.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**.