# IN THE SUPREME COURT OF IOWA

No. 18–1966

Submitted November 18, 2020—Filed December 23, 2020

**BENSKIN, INC.,**

Appellant,

vs.

**WEST BANK,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Samantha J. Gronewald, Judge.

Defendant Bank seeks further review of court of appeals decision reversing order granting motion to dismiss. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. McDermott, J., took no part in the consideration or decision of the case.

Steven P. DeVolder (argued) of DeVolder Law Firm, P.L.L.C., Norwalk, and William W. Graham of Duncan Green, P.C., Des Moines, for appellant.

Dennis P. Ogden (argued) and Thomas L. Flynn of Brick Gentry, P.C., West Des Moines, for appellee.

**WATERMAN, Justice.**

Motions to dismiss are disfavored. Iowa is a notice pleading state. Lawyers should exercise "professional patience" and challenge vulnerable cases by summary judgment or at trial instead of through "premature attacks on litigation by motions to dismiss." *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 181 (Iowa 1991). The court of appeals took such admonitions to heart and reversed the district court's ruling granting a bank's motion to dismiss its debtor's pleadings, alleging breach of contract, breach of the implied duties of good faith and fair dealing, fraud, and slander of title. The district court, examining the four corners of the debtor's amended petition, had ruled that the contract and fraud claims were time-barred, rejected the debtor's discovery rule and equitable estoppel arguments, and ruled the slander-of-title count failed to allege the element of publication to a third party. The court of appeals applied equitable estoppel to avoid the time-bar and held the slander-of-title count was adequately pled. We granted the bank's application for further review.

On our review, we determine that the district court correctly dismissed this case on the pleadings, except for slander of title. We accept as true the debtor's factual allegations. The bank's alleged wrongdoing—failure to release encumbrances—took place in 2008, and the debtor admittedly learned of the bank's refusal by June 27, 2011, well within the statute of limitations period. The contract and good-faith claims are subject to a seven-year statute of limitations with no discovery rule and that period expired in 2015. The fraud claim is governed by a five-year statute of limitations with a discovery rule and that period expired in 2016. The debtor did not file this lawsuit until May 18, 2018. Those claims are time-barred and the equitable estoppel argument fails as a matter of law. We agree with the court of appeals that slander of title was adequately

alleged. Recording statutes provide notice to the public and a wrongful encumbrance on real estate is thereby "published." For the reasons explained more fully below, we vacate the decision of the court of appeals in part and affirm the district court's judgment dismissing all claims except slander of title, which we reinstate.

## I. Background Facts and Proceedings.

According to the amended petition, on October 6, 2006, Benskin, Inc. entered into a written loan agreement with West Bank to borrow $800,094. The loan was secured by guarantees from Martin and Susan Benskin and a real estate mortgage on the corporation's property in Dickinson County. The terms of the loan were set forth in a promissory note (the 2006 promissory note), loan guarantees, and a real estate mortgage. The 2006 loan was renewed in a promissory note dated August 1, 2007, with a maturity date of August 1, 2008.

On October 24, 2007, Benskin entered into a separate agreement for a line of credit (the 2007 line of credit) with West Bank for up to $2 million to purchase land for development. The terms were set forth in a promissory note again secured by guarantees from Martin and Susan Benskin and mortgages on the Dickinson County land and this time on real estate Benskin owned in Polk County (the 2007 mortgages). Benskin never borrowed against the line of credit. On May 30, 2008, the 2007 promissory note and mortgages matured. "On and after that date, West Bank was obligated to release the 2007 Mortgages." Benskin alleged,

> 10. At various times after May 30, 2008, West Bank, through its officers and employees, made multiple representations, now known to have been false, that it would take the steps necessary to release the 2007 Mortgages.
>
> 11. Despite its obligation to release the 2007 Mortgages, and contrary to its representations and promises to do so, West Bank failed and refused to release the 2007

Mortgages, even after repeated requests and demands from Plaintiff.

12. Defendant's first express statement to Plaintiff refusing to release the 2007 Mortgages was on June 27, 2011. At least until that date, West Bank intentionally misled Plaintiff by making . . . false statements and promises leading Plaintiff to believe that West Bank was going to release the 2007 Mortgages and was taking procedural steps to do so.

On July 22, 2016, during the course of other litigation, Benskin further alleged it

learned information indicating that at some time after the creation of the 2007 Line of Credit, West Bank internally altered its records so as to purport to show an unauthorized advance under the 2007 Line of Credit to pay off, before it was due, the 2006 Promissory Note. That action was wrongfully concealed by West Bank and was taken by West Bank without Plaintiff's agreement, consent, or knowledge and was not discovered by Plaintiff until after July 22, 2016.

The alleged misuse of the line of credit occurred in 2008. Benskin's property remained encumbered by the 2007 mortgages.

On May 18, 2018, Benskin sued West Bank in a three-count petition alleging breach of (I) the 2007 contracts, (II) the 2006 promissory note, and (III) the implied duties of good faith and fair dealing. West Bank filed a motion to dismiss on grounds that the seven-year statute of limitations in Iowa Code section 524.221(2) (2018) barred all claims. Benskin responded by amending its petition to add count IV, alleging fraud, and count V, alleging slander of title. West Bank withdrew its initial motion and filed a new motion to dismiss, arguing section 524.221(2) barred counts I–III, section 614.1(4) (five-year statute of limitations for fraud) barred counts IV and V, and count V failed to state a claim upon which relief could be granted because no publication to a third party was alleged. Benskin filed a resistance that argued for the ten-year statute of limitations in section 614.1(5) and further argued that the discovery rule or equitable estoppel

avoided the limitations defense and the 2007 mortgage encumbrances as public filings satisfied the publication element for the slander of title.

The district court granted West Bank's motion to dismiss all claims. The court ruled that equitable estoppel can apply to breach of contract claims but determined that Benskin failed to allege a "specific statement or action as the basis of its equitable estoppel claim" and rejected its discovery rule argument. The court determined the first four counts were time-barred and that count V failed to state a claim for slander of title because no publication was alleged.

Benskin appealed, and we transferred the case to the court of appeals. The court of appeals reversed and reinstated all claims, holding that equitable estoppel was adequately pled to avoid a motion to dismiss on the statute of limitations and that the slander-of-title claim was adequately pled. We granted West Bank's application for further review.

## II. Standard of Review.

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014) (quoting *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012)). "For purposes of reviewing a ruling on a motion to dismiss, we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Id.* "[W]e will affirm a dismissal only if the petition shows no right of recovery under any state of facts." *Rieff v. Evans*, 630 N.W.2d 278, 284 (Iowa 2001) (en banc) (quoting *Barnes v. State*, 611 N.W.2d 290, 292 (Iowa 2000) (en banc)). We construe the petition in "its most favorable light, resolving all doubts and ambiguities in [the plaintiff's] favor." *Id.* (quoting *Schreiner v. Scoville*, 410 N.W.2d 679, 680 (Iowa 1987)).

"A defendant may raise the statute of limitations by a motion to dismiss if it is obvious from the uncontroverted facts contained in the

petition that the applicable statute of limitations bars the plaintiff's claim for relief." *Venckus v. City of Iowa City*, 930 N.W.2d 792, 809 (Iowa 2019) (quoting *Turner v. Iowa State Bank & Tr. Co. of Fairfield*, 743 N.W.2d 1, 5 (Iowa 2007)); *see also Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 557, 575 (Iowa 2018) (affirming order granting motion to dismiss and noting that whether discovery rule and equitable estoppel apply "is often a fact-intensive inquiry for which a ruling on a motion to dismiss or at the summary judgment stage is often inappropriate. Yet, it is also true that a plaintiff may plead himself out of court by alleging facts that provide the [defendant] with a bulletproof defense and foreclose application of equitable tolling." (citation omitted)).

### III. Analysis.

We will first address the applicable statute of limitations and conclude the contract claims are governed by the seven-year limitation in Iowa Code section 524.221(2)[1] and the fraud claim is governed by the five-year limitation in section 614.1(4). We then determine that based on the factual allegations in the amended petition, neither the discovery rule nor equitable estoppel avoid those limitations. Finally, we determine that the publication element of slander of title was adequately alleged because the recording statute provides notice to the public.

### A. The Governing Statutes of Limitation.

1. *Counts I and II, alleging breach of written contracts.* The district court ruled that Iowa Code section 524.221(2) provides the governing statute of limitations for counts I and II of Benskin's amended petition alleging breach of written contracts. We begin with the statutory language.

---

[1]This banking statute provides that the period of six years begins on the date of accrual that is either (a) "one year after the breach or failure of performance of a written contract" or (b) "one year after the date of such entry or entries." Iowa Code § 524.221(2). Thus, the plaintiff has a total of seven years from the breach.

Iowa Code section 524.221(2) was amended in 2011 to shorten the limitations period from eleven years[2] to seven with the addition of the italicized language and now provides:

> 2. All causes of action, other than actions for relief on the grounds of fraud or mistake, against a state bank based upon a *claim or claims founded on a written contract, or a* claim or claims inconsistent with an entry or entries in a state bank record, made in the regular course of business, shall be deemed to have accrued, and shall accrue for the purpose of the statute of limitations one year *after the breach or failure of performance of a written contract, or one year* after the date of such entry or entries. No action founded upon such a cause may be brought after the expiration of *six* years from the date of such accrual.

2011 Iowa Acts ch. 87, § 2 (codified at Iowa Code § 524.221(2) (Supp. 2011)) (emphasis added). West Bank argues that the seven-year period of limitations in Iowa Code section 524.221(2) commenced upon the 2008 breach and expired in 2015 to bar Benskin's written contract claims. Benskin argues that the ten-year statute of limitations for written contracts in section 614.1(5) or the eleven-year limitation in the earlier version of section 524.221(2) governs counts I and II and that postamendment section 524.221(2) is inapplicable for two reasons: (1) its effective date was July 1, 2011, and it cannot apply retroactively to contracts breached earlier; and (2) the contracts at issue or record entries were not "made in the regular course of business." We agree with West Bank and the district court that the seven-year limitation in section 524.221(2) governs the contract claims and the limitation period expired in 2015.

First, Benskin commenced this action in 2018, after the effective date of the 2011 amendment. We apply the period of limitation that is in

---

[2]Prior to 2011, the claimant had ten years after the date of accrual, which was a year after the breach. Thus, we refer to the period of limitation as eleven years. Iowa Code § 524.221(2) (2011).

effect when the plaintiff sues. *See In re Est. of Weidman*, 476 N.W.2d 357, 363–64 (Iowa 1991) (en banc). We hold that the seven-year time-bar governs the contract claims filed in 2018 even though the written contracts were executed and allegedly breached before the 2011 amendment.

Second, we see no reason why these contracts (the commercial line of credit, promissory notes, real estate mortgages, and personal guarantees) at issue were not "made in the regular course of business" within the meaning of Iowa Code section 524.221(2). We reject Benskin's argument that it can avoid the statutory limitations period simply by omitting an allegation that the contracts or record entries were made in the regular course of the bank's business. And we reject Benskin's argument that it can avoid this time-bar by alleging the bank's actions were wrongful (that is, the bank "cooked the books") and therefore outside the scope of the statute. That argument goes to the merits of the underlying claim rather than to the determination of the applicable limitations period. To hold otherwise would eviscerate the statute.

Finally, we hold that section 524.221(2) governs Benskin's written contract claims against West Bank, a state bank, rather than the general statute of limitations for written contracts in section 614.1(5). Section 524.221(2), as the more specific statute, controls. *See MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 883 (Iowa 2020) ("To the extent 'there is a conflict or ambiguity between specific and general statutes, the provisions of the specific statutes control.' " (quoting *Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 194 (Iowa 2011))); *see also* Iowa Code § 4.7 ("If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision."). The legislature

amended Iowa Code section 524.221(2) to shorten its limitation period from eleven years to seven years. *See* 2011 Iowa Acts ch. 87, § 2 (codified at Iowa Code § 524.221(2) (Supp. 2011)). "The evident purpose" of that amendment "is to hasten resolution of such claims" against state banks founded on written contracts. *See MidWestOne Bank,* 941 N.W.2d at 883 (quoting *Farmers Coop. Co. v. Swift Pork Co.,* 602 F. Supp. 2d 1095, 1110 (N.D. Iowa 2009)) (addressing Iowa Code section 614.1(10)).

Benskin's written contract claims accrued no later than 2008, when West Bank failed to perform the written contract by not releasing the 2007 mortgages. Benskin did not file this action until 2018, over seven years later. The district court correctly ruled that counts I and II are time-barred.

2. *Count III, alleging breach of duties of good faith and fair dealing.* The district court ruled that count III is also governed by the seven-year period of limitation in Iowa Code section 524.221(2). Benskin argues that count III is not covered by that provision because the claim is based on the implied duty of good faith and fair dealing rather than for breach of a written contract. Benskin relies on *Legg v. West Bank,* 873 N.W.2d 763, 774 (Iowa 2016). In *Legg,* the plaintiffs alleged that West Bank breached implied and express duties of good faith by altering how it sequenced bank card transactions without informing its customers. *Id.* at 772. Rather than paying off the largest transactions first, as it had customarily done, the bank paid off the smallest denomination checks first and then the largest checks. *Id.* at 766–67. This resulted in more penalties for account holders, including the plaintiffs. *Id.* at 767. The Leggs sued under Iowa Code chapter 537 (consumer credit code), and our decision did not mention section 524.221(2). *Id.*

"An express contract and an implied contract cannot coexist with respect to the same subject matter, and the former supersedes the latter." *Id.* at 771 (quoting *Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 791 (Iowa 1985) (en banc)). When the Leggs opened an account with West Bank, the written agreement stated that West Bank "shall have an obligation to Depositor to exercise good faith and ordinary care in connection with each account." *Id.* at 773. As such, we held that there was "an express contract govern[ing] West Bank's duty to act in good faith" and that the plaintiffs did not have a claim based on an *implied* duty of good faith. *Id.* at 773–74. We determined that Iowa Code section 614.1 set out the statute of limitations for express and implied covenants of good faith. *Id.* at 774. A written contract had a ten-year period of limitation, whereas an unwritten contract had a five-year period. *Id.* Because the Legg's claim rested on a written contract, the period of limitations was ten years. *Id.*

Even though Benskin's count III is based on *implied* duties of good faith and fair dealing and alleges no written contract term expressly requiring good faith, we conclude it is still subject to Iowa Code section 524.221's statute of limitations. While we imply a duty of good faith and fair dealing in commercial contracts, the implied duty "does not 'give rise to new substantive terms that do not otherwise exist in the contract.'" *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 34 (Iowa 2012) (quoting *Mid-Am. Real Est. Co. v. Iowa Realty Co.*, 406 F.3d 969, 974 (8th Cir. 2005)); *see also Am. Tower, L.P. v. Loc. TV Iowa, L.L.C.*, 809 N.W.2d 546, 550 (Iowa Ct. App. 2011) ("Implied contractual duty of good faith and fair dealing in commercial contracts does not support an independent cause of action for failure to act in good faith under a contract; instead, the duty of good faith is meant to give the parties what they would have stipulated

for at the time of contracting if they could have foreseen all future problems of performance." (quoting 13 Richard A. Lord, *Williston on Contracts* § 38.15, at 24 (4th ed. Supp. 2011))). In other words, the implied duty cannot exist without an underlying contract.

Iowa Code section 524.221 provides the statutory time period for "[a]ll causes of action . . . against a state bank based upon a claim or claims *founded on a written contract.*" Iowa Code § 524.221(2) (emphasis added). Benskin's claim for breach of a duty of good faith is "founded on" written contracts subject to section 524.221's seven-year statute of limitation; it cannot exist without them. For the same reasons that this more specific limitations period applies to counts I and II as compared to the general limitations period provided in section 664.1, *see MidWestOne Bank*, 941 N.W.2d at 883, we hold section 524.221(2) governs count III.

Benskin's claims under count III accrued in 2008 when West Bank failed to perform the written contract by not releasing the 2007 mortgages. Benskin filed this lawsuit in 2018. The district court correctly ruled that count III is time-barred.

3. *Count IV, alleging fraud.* The parties agree, and the district court ruled, that Benskin's fraud claim in count IV is governed by the five-year statute of limitations in Iowa Code section 614.1(4). Section 614.1(4) provides:

> 4. *Unwritten contracts — injuries to property — fraud — other actions.* Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years, except as provided by subsections 8 and 10.

Count IV's fraud claim accrued, at the latest, by June 27, 2011, when West Bank reneged on its prior promises and contractual obligation to

release the 2007 mortgages. Yet Benskin waited over six years to file its lawsuit in 2018. The district court correctly ruled that count IV is time-barred under Iowa Code section 614.1(4).

**B. Benskin's Equitable Estoppel and Discovery Rule Arguments.** The district court rejected Benskin's equitable estoppel and discovery rule arguments. The court of appeals, without reaching the discovery rule, reversed and reinstated counts I–IV based on its conclusion that Benskin adequately alleged equitable estoppel. In our view, Benskin's own allegations, as a matter of law, defeat application of the discovery rule and equitable estoppel. *See Mormann*, 913 N.W.2d at 575 (noting "a plaintiff may plead himself out of court by alleging facts that provide . . . a bulletproof defense and foreclose application of equitable tolling").[3]

In *Mormann v. Iowa Workforce Development*, we recently reviewed "the contours of equitable tolling" that "generally involve[] two doctrines, the discovery rule and equitable estoppel." *Id.* at 570. Importantly, "[i]n order to invoke either theory of equitable tolling, the asserting party must show reasonable diligence in enforcing the claim." *Id.* "The party pleading an exception to the normal limitations period has the burden to plead and prove the exceptions." *Franzen v. Deere & Co.*, 334 N.W.2d 730, 732 (Iowa 1983); *see also Skadburg v. Gately*, 911 N.W.2d 786, 793 (Iowa 2018) ("Although [defendant] has the burden of establishing the statute-of-limitations defense, [plaintiff], as the party attempting to avoid the limitations period, has the burden of demonstrating any exception."). We will address the discovery rule and equitable estoppel separately.

---

[3]Courts applying federal notice pleading standards recognize that although "complaints need not anticipate or meet potential affirmative defenses," dismissal on the pleadings is appropriate when the plaintiff's "allegations show that there is an airtight defense [such that he] has pleaded himself out of court." *Richards v. Mitcheff*, 696 F.3d 635, 637, 638 (7th Cir. 2012).

1. *The discovery rule.* A threshold legal issue is whether the discovery rule applies to claims governed by the statute of limitations in Iowa Code section 524.221(2). We have previously held that the discovery rule does not apply to statutes in which a specific event triggers the running of the limitation period. *See MidWestOne Bank,* 941 N.W.2d at 884–85 (holding the discovery rule does not apply to Iowa Code section 614.1(10) and surveying cases holding the discovery rule inapplicable to other statutes in which a specific event triggers the running of the limitation period). Section 524.221(2) is such a statute because a specific event triggers the running of the seven-year limitation period, namely, the date of the breach or failure to perform a written contract, or when the bank made the entry or entries in the bank's records:

> 2. All causes of action, other than actions for relief on the grounds of fraud or mistake, against a state bank based upon a claim or claims founded on a written contract, or a claim or claims inconsistent with an entry or entries in a state bank record, made in the regular course of business, shall be deemed to have accrued, and shall accrue for the purpose of the statute of limitations *one year after the breach or failure of performance of a written contract, or one year after the date of such entry or entries.* No action founded upon such a cause may be brought after the expiration of six years from the date of such accrual.

Iowa Code § 524.221(2) (emphasis added). Moreover, a discovery rule would run counter to the corresponding seven-year record retention requirement for state banks. Section 524.221(1)(*a*) requires:

> 1. *a.* A state bank is not required to preserve its records for a period longer than seven years after the first day of January of the year following the time of the making or filing of such records, provided, however, that account records showing unpaid balances due to depositors shall not be destroyed.

It would make little sense to allow lawsuits to be asserted over seven years after a breach, when the bank may no longer have the relevant records.

Finally, section 524.221(2) governs breach of contract actions against state banks, and we generally refrain from applying a discovery rule in breach of contract actions. *See Hamm v. Allied Mut. Ins.*, 612 N.W.2d 775, 784 (Iowa 2000) (en banc) ("The general rule is that the contract statute of limitations commences upon the date the contract is breached."); *Brown v. Ellison*, 304 N.W.2d 197, 201 (Iowa 1981) (applying discovery rule to express and implied warranty claims arising from defective construction of a well, while recognizing "strong authority disfavoring the application of the discovery rule to actions based on contract"), *overruled on other grounds by Franzen*, 334 N.W.2d at 732. We hold that the discovery rule does not apply to Iowa Code section 524.221(2).

The discovery rule, however, can apply in a fraud action governed by section 614.1(4). In *Mormann*, we noted "the discovery rule is not available to toll the running of the filing requirements" when the "plaintiff is on notice of a prima facie case." 913 N.W.2d at 576; *see also Hallett Constr. Co. v. Meister*, 713 N.W.2d 225, 231 (Iowa 2006) ("The discovery rule tolls the statute of limitations until the plaintiff has discovered 'the fact of the injury and its cause' or by the exercise of reasonable diligence should have discovered these facts." (quoting *K & W Elec., Inc. v. State*, 712 N.W.2d 107, 116 (Iowa 2006))). Here, Benskin alleges the breach occurred in 2008 and that it knew on June 27, 2011, that West Bank refused to release the 2007 encumbrances. Benskin was therefore on notice of a prima facie case by 2011. Benskin alleges it discovered additional facts supporting its claims in 2016 (the bank's improper use of the line of credit to pay off the 2006 note), but as we made clear in *Mormann*,

> [l]ater discovery of facts may make the claim stronger, but even under a relatively robust approach to the discovery rule,

> the knowledge of facts sufficient to make a prima facie case
> . . . is sufficient to trigger the running of the filing limitations.

913 N.W.2d at 576–77 (footnote omitted); *see also Hallett Constr. Co.*, 713 N.W.2d at 231 ("A claimant can be on inquiry notice without knowing 'the details of the evidence by which to prove the cause of action.' " (quoting *Vachon v. State*, 514 N.W.2d 442, 446 (Iowa 1994))). Under the discovery rule, the statute of limitations on Benskin's fraud claim began running no later than June 27, 2011, and its lawsuit filed over six years later is time-barred under Iowa Code section 614.1(4).

2. *Equitable estoppel.* We agree with Benskin that equitable estoppel can be asserted to avoid the statute of limitations defense in Iowa Code section 524.221(2). This is because "even when a party has knowledge of a prima facie case," the defendant's misrepresentations that he "knows or should have known would lull the [plaintiff] into inaction may provide a vehicle to toll the running of the filing limitation under the equitable estoppel doctrine." *Mormann*, 933 N.W.2d at 577. However, "the circumstances justifying an estoppel end when '[the] plaintiff [becomes] aware of the fraud, or by the use of ordinary care and diligence should have discovered it.' " *Christy v. Miulli*, 692 N.W.2d 694, 702 (2005) (alterations in original) (quoting *Faust v. Hosford*, 119 Iowa 97, 100, 93 N.W. 58, 59 (1903)). Those circumstances ended on June 27, 2011, when West Bank expressly refused to release the encumbrances.

Benskin argues it had seven years from June 27, 2011 to file suit, such that this action commenced on May 18, 2018, was timely filed. While some jurisdictions give claimants the full statutory period going forward, others merely give a "reasonable time."[4] 51 Am. Jur. 2d *Limitation of*

---

[4]Some courts allow the statutory limitation period after the conduct giving rise to estoppel ends. *See, e.g.*, *Ott v. Midland-Ross Corp.*, 600 F.2d 24, 33 (6th Cir. 1979) ("[W]e hold that Ott was at least entitled to the full amount of time allowed by Congress for the commencement of his action, undiminished by any period of time in which it might

*Actions* § 386, at 693–94 (2000) [hereinafter 51 Am. Jur. 2d]. Iowa falls into the latter category.

In *Christy v. Miulli*, we set an outer limit by stating that when a plaintiff becomes aware, or should have become aware, of the fraud, "the plaintiff must file suit 'within a period of time not exceeding the original statutory period applicable to the particular cause of action.' " 692 N.W.2d at 702 (quoting 51 Am. Jur. 2d § 386, at 694). But in *Beeck v. Aquaslide 'N' Dive Corp.*, we noted the plaintiff must file suit "within the period of the statute of limitations or, if [defendant] was estopped to assert the statute of limitations, *within a reasonable time after the estoppel ceased to be operational.*" 350 N.W.2d 149, 159 (Iowa 1984) (emphasis added).

We hold that under Iowa Code section 524.221(2), the plaintiff must file suit within a reasonable period after the estoppel ends and does not get a fresh seven years from that end date. We so hold because "estoppel will not apply if a reasonable time remains within the limitations period for filing the action once the lulling has ceased." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 467 (D. Mass. 2018); *see also Barot v. Embassy of Republic of Zambia*, 264 F. Supp. 3d 280, 291

---

appear that he was unlawfully induced to forego commencing his action by the unfair and inequitable conduct of Midland-Ross.").

Other courts do not define "reasonable time" by the statutory limitations period. *See, e.g.*, *Gregory v. Stallings*, 468 P.3d 253, 262 (Idaho 2020) ("Even if a party is entitled to equitable estoppel, its preventative force 'does not last forever' " but "only for a reasonable time after the party asserting estoppel discovers or reasonably could have discovered the truth." (quoting *Ferro v. Soc'y of Saint Pius X*, 149 P.3d 813, 815–16 (Idaho 2006))); *Butler v. Mayer, Brown & Platt*, 704 N.E.2d 740, 745 (Ill. App. Ct. 1998) (holding that, when plaintiff waited eighteen months to sue, "equitable estoppel is unavailable . . . because he failed to sue within a reasonable time after defendant stopped offering the reassurances that plaintiff alleges lulled him into not filing suit"); *Peterson v. Groves*, 44 P.3d 894, 898 (Wash. Ct. App. 2002) ("Most jurisdictions, including Washington, adhere to the rule that estoppel to plead the statute of limitations does not last forever, and that the plaintiff must act within a reasonable time after discovering that the promises relied on were false.").

(D.D.C. 2017) ("[The plaintiff] still had more than two years from that point until the statute of limitations ran out . . . , which was a reasonable time in which she could have filed suit. Therefore, this is not one of the rare situations when this Court should apply the doctrine of equitable tolling." (citation omitted)), *aff'd,* 773 Fed. App'x 6 (D.C. Cir. 2019); *Butler v. Mayer, Brown & Platt,* 704 N.E.2d 740, 745 (Ill. App. Ct. 1998) ("Under Illinois law, equitable estoppel does not give a plaintiff the entire limitations period measured from the date the defendant discontinues the conduct that lulled the plaintiff into inaction. Equitable estoppel will not apply if the defendant's conduct ended within ample time to allow a plaintiff to avail himself of his legal rights under the statute of limitations.").

This requirement to file suit within a reasonable time after the estoppel ends

> implicitly contains the notion that the estoppel by inducement doctrine does not permit the indefinite and unlimited extension of the limitations period, and also allows a defendant to limit the period during which estoppel might otherwise apply, by taking affirmative steps to terminate whatever behavior or conduct arguably operates to induce a plaintiff not to sue.

51 Am. Jur. 2d § 386, at 694. West Bank ended any estoppel by its unequivocal affirmative communication to Benskin in June of 2011 refusing to remove the encumbrances.

"What constitutes a reasonable time appears to depend upon the exigencies of the particular case." *Peterson v. Groves,* 44 P.3d 894, 898 (Wash. Ct. App. 2002) (quoting Allan E. Korpela, Annotation, *Promises to Settle or Perform as Estopping Reliance on Statute of Limitations,* 44 A.L.R.3d 482, § 5 (1972)). A period of time may be unreasonable if the plaintiff did not show "reasonable diligence in bringing suit after the conduct giving rise to the estoppel had terminated." *Id.* In *Butler v. Mayer,*

*Brown & Platt*, the appellate court noted: "We have held that as little as six months remaining in a statute of limitations period is 'ample time' for a plaintiff to bring suit." 704 N.E.2d at 745.

Here, Benskin waited an unreasonable time to file its claims as a matter of law. The alleged breach occurred in 2008, giving Benskin no more than seven years—until 2015—to commence this action. *See* Iowa Code § 524.221(2). Benskin admits in its amended petition that it knew by June 27, 2011, that West Bank expressly refused to release the 2007 encumbrances. At that time, Benskin still had about four years to file suit within the original seven-year limitations period. Benskin alleges no subsequent affirmative misrepresentations by West Bank after June 27, 2011, that lulled Benskin into inaction. "An omission theory of equitable estoppel . . . simply is insufficient in the context of this case." *Mormann*, 913 N.W.2d at 577. West Bank's silence after June 27, 2011—including its alleged failure to disclose the use of the line of credit in 2008—is not enough to stop the time clock. *See id.*

Benskin argues that it reasonably delayed filing suit because it believed it owed nothing on the recorded encumbrances. Benskin's "zero balance" theory fails for several reasons. First, even with a zero balance, the encumbrance on the Polk County real estate, tied to a multi-million dollar credit line, would have restricted Benskin's ability to use the property to borrow from another lender. Indeed, its amended petition alleged that as a result of West Bank's encumbrances, Benskin "sustained special damages arising, among other things, from its inability to pursue investment and financial opportunities available to it which required unencumbered use of the Des Moines Properties." Second, West Bank's express refusal to release the 2007 mortgages in 2011 put Benskin on inquiry notice. It should have investigated the source of the payoffs on the

$800,094 renewed loan and six-figure activity on its line of credit. Waiting nearly seven years until May 18, 2018, was unreasonable as a matter of law. Third, Benskin did not plead its zero balance theory, and we cannot rely on facts outside the four corners of the petition to reverse a ruling granting a motion to dismiss. *See Rieff*, 630 N.W.2d at 284.

The district court correctly rejected Benskin's equitable estoppel argument. This legal issue was appropriately resolved by granting West Bank's motion to dismiss. *See Venckus*, 930 N.W.2d at 809. Benskin effectively pled itself out of court. *Mormann*, 913 N.W.2d at 575 ("[A] plaintiff may plead himself out of court by alleging facts that provide . . . a bulletproof defense and foreclose application of equitable tolling.").

**C. Slander of Title**. The district court ruled that count V failed to state a claim because Benskin did not adequately allege the element of publication. *See generally Belcher v. Little*, 315 N.W.2d 734, 737 (Iowa 1982) (discussing publication element). Benskin cites two unpublished opinions to support its argument that the publication element is satisfied by filing the encumbrance on a public docket: *Monroe v. Bank of America Corp.*, No. 17–cv–248–JED–JFJ, 2018 WL 1875294, at *2 (N.D. Okla. Apr. 19, 2018), and *Nelson v. Bayview Loan Servicing, L.L.C.*, No. 5–12–0419, 2014 WL 4629382, at *15 (Ill. App. Ct. Sept. 16, 2014). We left that question open in *Witmer v. Valley National Bank of Des Moines*. 223 Iowa 671, 674, 273 N.W. 370, 371 (1937) ("Whether or not the commencement of a foreclosure . . . is an uttering and publishing of slanderous words against appellant's title to land, we do not find it necessary to pass upon and do not do so.").

Recorded documents by definition are available to the general public. A "record" under Iowa law is defined as "a process . . . to incorporate a document or instrument into the *public* record." Iowa Code

§ 331.601A(8) (emphasis added); *see also id.* § 331.606(4) ("A person may view and copy an original or unaltered document or instrument in the office of the recorder."). Thus, a recorded encumbrance is effectively published to the public at large. *See Phillips v. Epic Aviation LLC*, 234 F. Supp. 3d 1174, 1208–09 (M.D. Fla. 2017) (holding publication and noting that recording meant that it was " 'always [] open to the public . . . for the purpose of inspection thereof and of making extracts' . . . [and] one of the purposes of recording in the Official Records is to give notice to third parties") (second alteration in original) (quoting Fla. Stat. § 28.222(7)).

Other courts have held that recording satisfies the publication element for the tort of slander of title. *See, e.g.*, *Fischer v. Bar Harbor Banking & Tr. Co.*, 673 F. Supp. 622, 626 n.6 (D. Me. 1987) ("The filing of liens, mortgages, and other encumbrances is a sufficient publication to disparage or slander title." (citing William L. Prosser, *The Law of Torts* § 122, at 943 (3d ed. 1964))), *aff'd*, 857 F.2d 4 (1st Cir. 1988); *Shenefield v. Axtell*, 545 P.2d 876, 877, 878 (Or. 1976) (en banc) (holding "the complaint sufficiently stated a cause of action for slander of title" where the defendant had "maintained on the [county records] a claim of title to the land held in trust for plaintiff"); *see also Phillips*, 234 F. Supp. 3d at 1208–09 (holding that "the recording of each of the three documents in the Official Records satisfies the publication requirement in this case"); *Fountain Pointe, LLC v. Calpitano*, 76 A.3d 636, 640, 643 (Conn. App. Ct. 2013) (affirming judgment of slander of title when the defendants "recklessly record[ed] the mortgages and the lis pendens that they knew were false"); *Gasper v. Bank of Am., N.A.*, 133 N.E.3d 1037, 1046 (Ohio Ct. App. 2019) ("The wrongful filing for the record of a document which casts a cloud upon another's title to or interest in realty is considered to be an act of publication which gives rise to an action for slander of title." (quoting

*Smith Elec. v. Rehs*, No. 18433, 1998 WL 103334, at *2 (Ohio Ct. App. Feb. 18, 1998))); *Rorvig v. Douglas*, 873 P.2d 492, 495, 498 (Wash. 1994) (en banc) (holding the plaintiffs prevailed on their slander-of-title claim involving the recording of a memorandum of agreement when there was no final agreement between the parties); *Kensington Dev. Corp. v. Israel*, 419 N.W.2d 241, 244 (Wis. 1988) ("A knowingly false, sham or frivolous claim of lien or any other instrument relating to real or personal property filed, documented or *recorded* which impairs title is actionable in damages." (emphasis added)).

We find these authorities persuasive and now answer the question we left open in *Witmer*. We hold that filing an encumbrance on a public docket in the recorder's office satisfies the publication element for slander of title.

West Bank argues that Benskin failed to specifically allege the encumbrance was filed pursuant to the recording statute. This argument fails under our liberal standards for notice pleading. The allegations of count V gave fair notice of the nature of the claim. By definition, to constitute a slander of title, the complained-of encumbrance would have been publicly filed. We construe Benskin's amended petition in "its most favorable light, resolving all doubts and ambiguities in [the plaintiff's] favor." *Rieff*, 630 N.W.2d at 284 (quoting *Schreiner*, 410 N.W.2d at 680). We reverse the district court's ruling dismissing count V and affirm the court of appeals decision that count V states a claim for slander of title.

West Bank raised the statute of limitations in district court and on appeal as an alternative ground for dismissing the slander-of-title claim. Neither the district court nor the court of appeals reached that ground, and West Bank did not raise it in its application for further review. Although the issue was minimally raised, it wasn't briefed, and we decline

to reach it now. "A supreme court is 'a court of review, not of first view.' " *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 413 (Iowa 2017) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7, 125 S. Ct. 2113, 2120 n.7 (2005)). West Bank is free to renew its statute of limitations defense to the slander-of-title claim on remand.[5]

## IV. Disposition.

For these reasons, we affirm the decision of the court of appeals reinstating the slander-of-title claim and vacate the court of appeals decision on equitable estoppel. We affirm the district court judgment dismissing counts I through IV and reverse the judgment dismissing count V. We remand the case for further proceedings on the slander-of-title claim.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except McDermott, J., who takes no part.

---

[5]The parties dispute which statute of limitations applies and whether the continuing wrong doctrine applies to slander of title.